## IN THE CIRCUIT OF THE SEVENTH JUDICIAL CIRCUIT
## IN AND FOR VOLUSIA COUNTY, FLORIDA

**KARY JARVIS**                     **CASE NO.:**

      **Plaintiff,**

**v.**

**CITY OF DAYTONA BEACH,**
**a Florida Municipal Corporation;**
**and MARVILLE TUCKER, in his official capacity**
**and also, individually; and**
**JAMES MACKENZIE, in his official capacity**
**and also, individually.**

      **Defendants.**
_____/

## COMPLAINT

COMES NOW the Plaintiff, **KARY JARVIS**, an individual, by and through the

undersigned counsel, and hereby sues the Defendants, **CITY OF DAYTONA**

**BEACH,** a governmental entity located in the State of Florida, Volusia County, and

**MARVILLE TUCKER,** an individual, an **JAMES MACKENZIE**, an individual,

and alleges the following:

1.    This is an action brought for the unlawful deprivation of rights as

accorded to Plaintiff, **KARY JARVIS**, by 42 U.S.C. § 1983, 42 U.S.C. § 1988, the

Fourth, Fifth, Eighth and Fourteenth Amendments to the United States Constitution

of the United States of America, and the laws of the State of Florida. Plaintiff's

claims arise from an incident October 23, 2020, in which Defendants subjected

2023 30194 CICI

Plaintiff to, among other things, excessive force, false arrest/imprisonment, and unlawful search and seizure. Pendent State Law claims are added as there is a common nucleus of facts.

JURISDICTION AND VENUE

2.      This is a civil action for damages within the original jurisdiction of the Court brought pursuant to 28 U.S.C. §§§ 1331, 1332, and 1343(3) and (4), and within the supplemental jurisdiction of the Court pursuant to 28 U.S.C. § 1367.

3.      Pendent state claims are added as there is a common nucleus of facts.

4.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because the acts occurred in Volusia County, Florida.

PARTIES

5.      At all times material to this action, Plaintiff, **KARY JARVIS** (hereinafter "JARVIS")**,** was a natural person residing in Daytona Beach, Volusia County, Florida.

6.      At all times material to this action, Defendant, **CITY OF DAYTONA BEACH** (hereinafter "CITY")**,** was and still is a Municipal Corporation and governmental entity existing under the laws of the State of Florida

7.      At all times material to this action, Defendant, **MARVILLE TUCKER** (hereinafter "TUCKER")**,** was employed as a police officer by the CITY, and he is

a citizen of the State of Florida. He is sued both in his individual and also in his official capacity.

8. At all times material to this action, Defendant, **JAMES MACKENZIE** (hereinafter "MACKENZIE")**,** was and still is employed as a police officer by the CITY, and he is a citizen of the State of Florida. He is sued both in his individual and also in his official capacity.

9. Defendant, CITY, is the local government entity and/or agency under whose jurisdiction and authority the acts complained of herein occurred, and the official with final decision-making authority.

10. Plaintiff has fully complied with all condition precedent to bring this action imposed by the laws of the State of Florida, and particularly the provision of § 768.28, Florida Statutes.

<u>STATEMENT OF FACTS COMMON TO ALL CAUSES OF ACTION</u>

11. Plaintiff seeks monetary relief over $3,500,000.00 and a demand for judgment for all other relief to which Plaintiff may be entitled in this false arrest, excessive force, unlawful search and seizure and other constitutional violations case.

12. Defendant, CITY, had a duty to ensure that its employees and subordinates, including but not limited to, TUCKER and MACKENZIE, complied with Florida and Federal Law.

13.     CITY, was at all times mentioned herein, and still is, responsible for developing, implementing, promulgating, and enforcing customs, usages, practices, procedures, policies, and rules of employees, including TUCKER and MACKENZIE.

14.     CITY, was at all times mentioned herein, and still is, responsible for training and supervision of Defendant MACKENZIE

15.     CITY, was at all times mentioned herein responsible for training and supervision of Defendant TUCKER.

16.     Prior to February 26, 2018, Defendant, CITY, permitted, encouraged, tolerated, and ratified a pattern of practice or custom of completing fabricated and inaccurate reports, as well as allowing officers to make arrests without probable cause, by:

a.      Allowing officers to use fabricated statements when effectuating arrests on citizens and failing to discipline officers.

b.      Allowing officers to make arrests without probable cause to stop, interrogate, or detain citizens in violation of their civil rights.

c.      Failing to discipline its officers for making arrests without probable cause.

d.      Failing to discipline its officer for conducting illegal search and seizures.

17.     CITY has established a permanent and well-settled practice and custom to permit law enforcement officers, including Defendants, TUCKER and MACKENZIE to fabricate evidence and make false arrests in violation of citizens' Constitutional rights, as may be inferred from repeated occurrences of similar wrongful and unlawful conduct:

a.      CITY paid attorney's fees to a Plaintiff, that being Paul Smallbeing as prevailing party in a civil rights claim.

b.      CITY settled a claim alleging false arrest of Plaintiff, that being Vivian Brown in a Case "2014 31180 CICI" filed July 10, 2014, in the Circuit Court of the Seventh Judicial Circuit. CITY's Officer Richard Maher arrested Vivian Brown for a felony charge of grand theft without probable cause before viewing the surveillance video depicting two others committing the crime and Vivian Brown was not present.  City failed to discipline Officer Maher.

c.      Plaintiff in Olson v. Dier et al, Case "6:10-cv-01771-JA-TBS KRS (Middle District of Florida), successfully asserted civil rights claims pursuant to 42 U.S.C. § 1983.

d.      Plaintiff in Ingram, et al. v. City of Daytona Beach, et al., Case "6:03-cv-01189-GKS-KRS (Middle District of Florida), successfully asserted civil rights claims pursuant to 42 U.S.C. § 1983.

e.      Plaintiff in Otha Johnson v. City of Daytona Beach et al., Case "6:16-CV-941-ORL-40-TBS (Middle District of Florida) asserted a claim of false arrest without probable cause on March 1, 2015 by officers of CITY.  Plaintiff was arrested outside of his home after officers found his friend sleeping in her vehicle.  Plaintiff informed the officers of his name and when he turned to retrieve his identification from his home he was detained and subsequently arrested for disorderly conduct and resisting officer without violence.  CITY's officers carried out an agreement and common plan or scheme to intentionally fabricate the police reports and arrest affidavits concerning the incident.  The Honorable David Foxman granted Johnson's motion to suppress and made findings of fact and conclusions of law that CITY's officers lacked reasonable suspicion to initially detain Johnson and lacked probable cause to arrest Johnson.   CITY failed to discipline its officers.

f.      Plaintiff in Rashawn George v. City of Daytona Beach et al., Case "6:17-cv-00079-KRS (Middle District of Florida) asserted use of excessive force by officer of CITY and the case was settled.  George was having a mental breakdown when officers proceeded to taser the him in the chest, back, and head areas.  George was falsely arrested for disorderly conduct. CITY failed to discipline the officer.

g.      An investigation by the Daytona Beach News Journal uncovered a systematic use of force by CITY.

h.      CITY paid Plaintiff Elizabeth Beeland for her injuries caused by excessive force by its officer.  CITY's officer tasered Elizabeth Beeland after she yelled at the officer outside of Best Buy. Beeland was unlawfully arrested for disorderly conduct and resisting arrest.  CITY failed to discipline the officer.

i.      Founded disciplinary action against CITY's officer Brian Biddix for failure to truthfully, completely, and accurately complete a crime scene report including reporting completion of certain tasks that other officers had completed on or about July 11, 2014.

j.      Founded disciplinary action against CITY's officers Brian Biddix and Timothy Blowers for failure to truthfully, completely, and accurately complete a crime scene report including reporting completion of certain tasks that other officers had completed on or about April 14, 2015.

k.      Founded disciplinary action against CITY's officer Brian Biddix for failure to truthfully, completely, and accurately complete an internal police report involving damage to police property on or about April 14, 2015.

l.      Founded disciplinary action against City's officer Dawn Marie Harris for failure to truthfully, completely, and accurately complete a traffic citation on or about June 14, 2003.

m.      Founded disciplinary action against City's officer Dawn Marie Harris for failure to truthfully, completely, and accurately complete a traffic citation on or about August 5, 2003.

n.      Founded disciplinary action against City's officer Dawn Marie Harris for unlawful arrest, including lack of knowledge of the laws and failure to observe and obey laws and ordinances on or about March 7, 2012.

o.      In 2012, the CITY unlawfully arrested Marcel Cord after he exercised his First Amendment rights and officer threw him onto the concrete, and put knees into his back. He was subsequently nolle prossed for obstructing officer without violence.

p.      Founded disciplinary action against CITY's Officer Joshua Mersereau for use of force on a citizen. Mersereau's account of the citizen resisting contradicted what was depicted on the video. Mersereau was dishonest throughout the investigation on or about March 27, 2017.

q.      Plaintiff in Lavar Andrews v. City of Daytona Beach et al. 6:15-cv-952-Orl-40KRS (Middle District of Florida) asserted false arrest and use of excessive force by officers of CITY and the case was settled. Andrews a black

8

male was standing outside of his apartment near a group of males when CITY's officer swarmed them in suspicion of illegal activities. As the group begin to scatter, officers used force to detain Andrews and unlawfully arrested him for resisting arrest. Andrews charges were dismissed because the arrest was without probable cause.

r.      On May 17, 2016, Officer Marcus Booth was mandated disciplinary action for improper arrest with no probable cause. The State Attorney's office had concerns in regards to Booth's conduct during the arrest and the evidence was suppressed by the Judge due to an illegal search of a citizen's person. Booth was dishonest in his charging affidavit about receiving consent to search. The internal investigation found no probable cause existed to enter the room, no consent to search the room was ever asked, and Booth unlawfully searched and seized the citizen. Booth violated departmental standards directive 200.13: code of conduct/ethics, Professional Conduct and Responsibilities; Departmental Standards Directive 654.2: search and seizure general procedures; Departmental Standards Directive 654.5: search and seizure general procedures; and Departmental Standards Directive 654.7: Consent to Search. His original suspension of 36 hours was later reduced to 12 hours.

s.      On February 9, 2016, Officer Marcus Booth was found in violation of

Departmental Standards Directive 200.13: Code of Conduct/Ethics,

Professional Conduct and Responsibilities. In internal review of the arrest

made by Booth for Disorderly Conduct was not supported by the video

evidence. The investigator found that there was no probable cause for the

detention followed by the arrest and there were inconsistencies with

Booth's report and what the video shows.

t.      On April 24, 2013, finding were sustained against Marcus Booth  for

violating Departmental Standards Directive 200.13: Code of Conduct/Ethics,

Professional Conduct and Responsibilities; Departmental Standards Directive

78.1: Property and Evidence. Marcus Booth was acting as a field training

officer when he destroyed several pieces of drug paraphernalia that was

recovered during an incident.  Marcus Booth was dishonest about the amount

he destroyed and completed a fabricated report.

u.      Plaintiff in Cedric Beasley v. City of Daytona Beach et al., Case "6:21-

CV-850-GAP-GJK (Middle District of Florida) asserted a claim of unlawful

search without reasonable suspicion on February 26, 2018 by officers of

CITY.  The Honorable Judge Gregory Presnell ruled the officer was not

entitled to qualified immunity and granted summary judgment in Plaintiff's

favor.

18. On or about October 23, 2020, TUCKER and MACKENZIE were dispatched in reference to an anonymous narcotics complaint.

19. TUCKER and MACKENZIE observed Plaintiff leaving the gas station and conducted a traffic stop.

20. TUCKER and MACKENZIE approached Plaintiff's vehicle and requested Plaintiff's driver license and Plaintiff complied. TUCKER returned to his vehicle while MACKENZIE remained outside the passenger side window of Plaintiff's vehicle.

21. Plaintiff and MACKENZIE engage in a conversation until TUCKER returns to the driver side of the vehicle and returns to Plaintiff his driver license as well as a warning for a traffic violation.

22. Subsequently, TUCKER informs Plaintiff that he needs to search his vehicle and Plaintiff verbally refused consent to TUCKER's demand.

23. Plaintiff requested that TUCKER call a supervisor and his request went unmet.

24. TUCKER finally coerced Plaintiff to get out of the vehicle and Plaintiff complied because he feared he would be subjected to physical violence.

25. Plaintiff stood next to his vehicle when TUCKER and MACKENZIE told him he would need to step away from the vehicle while they performed a search.

26.     Plaintiff's refusals to the search of his vehicle again went ignored by TUCKER and MACKENZIE.

27.     As Plaintiff went to sit in the driver's seat of his vehicle TUCKER and MACKENZIE grabbed him and attempted to pull him from the vehicle impeding his will to leave.

28.     At this time, TUCKER nor MACKENZIE notified Plaintiff he was under arrest.

29.     Plaintiff was able to start driving his vehicle when TUCKER and MACKENZIE jumped into the driver's seat to attempt stop Plaintiff from leaving and impeding his will to leave.

30.     TUCKER grabbed the Plaintiff's steering wheel and snatched it causing the vehicle to veer of the road and crash into a tree and then come to a stop in a ditch.

31.     Plaintiff was immediately rendered unconscious from the impact and fell outside the vehicle causing further injuries.

32.     TUCKER ordered Plaintiff to stay on the ground at gun point and eventually handcuffed Plaintiff further exacerbating Plaintiff's injuries.

33.     CITY's Chief of Police, Jakari Young, responded to the scene and permitted the arrest of Plaintiff for Battery on a Law Enforcement Officer.

34.     TUCKER and BOOTH knew or should've known that it is clearly established that when the traffic stop ended they could not detain Plaintiff without reasonable suspicion.

35.     Multiple officers, including TUCKER and MACKENZIE, searched Plaintiff's vehicle.

36.     TUCKER and MACKENZIE knew or should've known that it is clearly established that that they did not have reasonable suspicion to search Plaintiff's vehicle when he refused consent.

37.     Plaintiff was searched and was not in possession of any contraband.

38.     Plaintiff was arrested for aggravated battery on a law enforcement officer using a deadly weapon, aggravated fleeing and eluding with serious injury, resisting an officer with violence, or destroying/tampering with physical evidence, trafficking in heroin, possession of THC oil, possession of narcotic paraphernalia, and carrying a concealed electric weapon.

39.     At no time during his arrest did Plaintiff resist.

40.     TUCKER fabricated the charging affidavit that he saw Plaintiff make a furtive movement prior to the traffic stop.

41.     The Florida State Attorney's office filed an information on December 2, 2020 charging plaintiff with 2 counts of aggravated battery on law enforcement officer, aggravated fleeing or attempt to elude with injury, trafficking in heroin or

hydromorphone, possession of schedule I substance, resisting an officer without violence, possession of paraphernalia, and carrying a concealed weapon.

42.     October 21, 2021, the Honorable Judge Sandra Upchurch granted Plaintiff's motion to suppress ruling that TUCKER and MACKENZIE violated Plaintiff's constitutional rights under the Fourth Amendment (Exhibit A).

43.     On October 25, 2021, the State Attorney's Office filed an appeal to the 5th District Court of Appeals.

43.     Plaintiff remained in custody and was released on bond on October 26, 2021, to the supervision of pre-trial services with conditions of weekly urine analysis.

44.     On January 6, 2022 the State Attorney's Office filed a voluntary dismissal of the appeal.

45.     On January 7, 2022 the 5th District Court of Appeals ordered that the appeal be dismissed.

46.     On January 11, 2022, the State Attorney's Office filed a nolle prosequi for all of the Plaintiff's charges.

47.     On January 12, 2022, the State Attorney's Office filed an announcement of no information for the charge of Tampering with Physical Evidence.

48.     Plaintiff was held in custody for 369 days. Plaintiff remained on supervision of pre-trial services for 77 days.

49.      Plaintiff filed a citizen's complaint with the Daytona Beach Police Department on March 4, 2022.

50.     The CITY's Office of Professional Standards found that MACKENZIE violated the following directives and concluded:

a. 200.13 Professional Conduct and Responsibilities: Every employee and member shall be required to establish and maintain a working knowledge of the Federal, State and local laws and ordinances that he/she is charged with enforcing. Every member and employee is expected to observe and obey laws and ordinances, and the rules , orders and directives of the department.

At the time of the incident Officer Mackenzie did not understand that the traffic stop was concluded once the written warning was issued.  Mr. Jarvis was within his right to refuse a search of his vehicle and any further detention of Mr. Jarvis was unlawful.

b.     200.30 Department Morale: No employee shall engage in conduct on or off duty which has a tendency to destroy public respect for the employee and/or the department and /or destroy confidence in the operation of the municipal service.

Officer Mackenzie's actions clearly destroyed Mr. Jarvis's respect and confidence in the department.

c. 654.13 General Court Decisions: Once appropriate action (i.e.: citation, arrest, contact card) has been taken, no citizen shall be detained beyond the point where there exists no reasonable suspicion of further criminal activity.

In reference to Mr. Jarvis's case the Court found that the reason for the traffic stop and detention was lawful. But the stop concluded once Mr. Jarvis received his warning and paperwork. At that point he was free to leave but was not allowed to do so. Instead Officer's insisted on searching even after Mr. Jarvis told them he did not agree to a search. The Court found that Mr. Jarvis was unlawfully detained.

51. The investigation revealed TUCKER would have also had directives 200.30 and 654.13 sustained against him if he was still an employee.

52. On August 2, 2022, CITY's Chief of Police, Jakari Young transcribed a written reprimand to MACKENZIE.

53. MACKENZIE received no other discipline or training for the violations.

54. At the time of this filing, the Plaintiff's charges still remain public record.

## COUNT 1 FALSE ARREST – ALL DEFENDANTS

55. Plaintiff realleges Paragraphs 1-54, as if fully set forth herein, and states additionally or alternatively:

56.    At all times mentioned herein, Defendants TUCKER and MACKENZIE, acted under color of law as police officers of, and with the authority of, the Defendant CITY.

57.    Defendants, TUCKER and MACKENZIE, falsely placed Plaintiff under arrest without probable cause that Plaintiff had committed a criminal offense.

58.    Defendants, TUCKER and MACKENZIE, knew or should have known that they did not have authority to arrest Plaintiff for the crimes of aggravated battery on a law enforcement officer using a deadly weapon, aggravated fleeing and eluding with serious injury, resisting an officer with violence, or destroying/tampering with physical evidence in violation of Article 1, Sections 9 and 12 of the Florida Constitution.

59.    As a result of the aforesaid conduct by Defendants, TUCKER and MACKENZIE, Plaintiff was subjected to an illegal, improper, and false arrest by the aforementioned Defendants and caused Plaintiff to be falsely imprisoned, detained, and confined, without any probable cause, privilege, or consent.

60.    As a result of the foregoing, Plaintiff was arrested on October 23, 2020, and taken to the Volusia County Jail, where he remained illegally incarcerated for 369 days until he was released, suffered physical pain and mental anguish, together with shock, fright, apprehension, embarrassment, and humiliation, and loss of liberty and freedom.

61.     As a direct and proximate result of these violations of Plaintiff's constitutional rights, he was made to suffer great emotional trauma, discomfort and embarrassment, was deprived of his liberty, his personal and professional reputations were impaired and he assessed a violation of probation. Plaintiff demands all relief that is just and equitable, including compensatory and punitive damages and costs.

## COUNT 2 FALSE ARREST 42 U.S.C. § 1983 – CITY OF DAYTONA BEACH

62.     Plaintiff realleges Paragraphs 1-54, as if fully set forth herein, and states additionally or alternatively:

63.     At all times mentioned herein, Defendants, TUCKER and MACKENZIE, acted under color of law as a police officer of, and with the authority of, the Defendant CITY.

64.     Defendants, TUCKER and MACKENZIE, falsely placed Plaintiff under arrest without probable cause that Plaintiff had committed a criminal offense. Defendants, TUCKER and MACKENZIE, knew or should have known that the arrest was violation of the Fourth Amendment of the United States Constitution to be free from unreasonable seizures.

65.     CITY's policy allowing its sworn law enforcement officers to arrest citizens regardless of probable cause, caused the underlying violations of Plaintiff's constitutional rights under the Fourth and Fourteenth Amendments of the United

States Constitution. CITY's police as final policy maker ratified the Plaintiff's arrest when he was present at the scene in supervisory capacity and allowed Plaintiff to be arrested.

66.     CITY has maintained a policy of ignoring citizens' fundamental Fourth Amendment constitutional rights to be free from unreasonable searches and seizures in the performance of official duties by its sworn law enforcement officers.  CITY's policy of unequal enforcement is in direct conflict with precedent set forth by the Supreme Court of the United States and the Florida District Courts of Appeals.

67.     Prior to February 26, 2018, CITY permitted, encouraged, tolerated, ratified a pattern of practice, and administrated a policy to permit officers, including Defendants, TUCKER and MACKENZIE, to engage in misconduct and violate the Constitutional rights of citizens, as well as make arrests without probable cause.

68.     CITY was deliberately indifferent as to its policy allowing its officers, including Defendants, TUCKER and MACKENZIE, to deprive citizens of their constitutional rights by promoting selective enforcement of the law and lacking probable cause for such an arrest as prescribed by the Fourth Amendment.

69.     CITY's failure to implement constitutional arrest policies evinces a deliberate indifference to the likelihood of ongoing constitutional violations which ultimately resulted in multiple violations of Plaintiff's rights under Federal law and the United States Constitution.

70.     As a result of the foregoing failures and refusals, CITY, has established a permanent and well-settled policy, practice, and custom to permit officers, including Defendants, TUCKER and MACKENZIE, to engage in false arrests and violate the Constitutional rights of citizens.

71.     As a result of the aforesaid conduct by Defendants, TUCKER and MACKENZIE, Plaintiff was subjected to an illegal, improper, and false arrest by the aforementioned Defendants and caused Plaintiff to be falsely imprisoned, detained, and confined, without any probable cause, privilege, or consent.

72.     As a result of the foregoing, the Plaintiff has suffered and is suffering irreparable injury and is threatened with irreparable harm in the future as a result of the acts of the defendants hereinabove alleged because, by reason of those actions, he has been absent the relief requested herein, and will continue to be subject to false arrests as he resides in CITY's jurisdiction.

73.     Plaintiff has no plain, adequate or complete remedy to redress the wrong complained of other than injunctive relief as requested in this cause of action in that any other remedy which Plaintiff could be remitted would be attended by such uncertainties and delays as to deny substantial relief, involve a multiplicity of suits, and cause further irreparable injury to the Plaintiff and others similarly situated.  An award of damages to the Plaintiff for past wrongs would not be adequate to protect him from continuing and future conduct of the Defendants in instituting further

prosecutions against the Plaintiff under illegal procedures purportedly authorized by the policy the constitutionality of which is challenged herein.

74.    As a direct and proximate result of these violations of Plaintiff's constitutional rights, he was made to suffer great emotional trauma, discomfort and embarrassment, was deprived of his liberty, his personal and professional reputations were impaired and he was assessed a violation of the conditions of his probation.

75.    Plaintiff demands all relief that is just and equitable, including compensatory damages, punitive damages, costs, and attorney fees.

<u>COUNT 3 FALSE ARREST 42 U.S.C. § 1983 – TUCKER AND MACKENZIE</u>

76.    Plaintiff realleges Paragraphs 1-54, as if fully set forth herein, and states additionally or alternatively:

77.    At all times mentioned herein, Defendants, TUCKER and MACKENZIE, acted under color of law as an officer of, and with the authority of, the Defendant CITY.

78.    Defendants TUCKER and MACKENZIE, falsely placed Plaintiff under arrest without probable cause that Plaintiff had committed a criminal offense. Defendants, TUCKER and MACKENZIE, knew or should have known that the arrest was violation of the Fourth Amendment of the United States Constitution to be free from unreasonable seizures.

79.     As a direct and proximate result of these violations of Plaintiff's constitutional rights, he was made to suffer great emotional trauma, discomfort and embarrassment, was deprived of his liberty, his personal and professional reputations were impaired and he was assessed a violation of the conditions of his probation.

80.     Plaintiff demands all relief that is just and equitable, including compensatory damages, costs, and attorney fees.

COUNT 4 UNLAWFUL DETENTION AND SEARCH 42 U.S.C. § 1983 – CITY

81.     Plaintiff realleges Paragraphs 1-54, as if fully set forth herein, and states additionally or alternatively:

82.     At all times mentioned herein, Defendants, TUCKER and MACKENZIE, acted under color of law as a police officer of, and with the authority of, the Defendant CITY.

83.     Defendants, TUCKER and MACKENZIE, unlawfully detained and searched Plaintiff in contravention of the Fourth Amendment of the United States Constitution without reasonable suspicion by:

a.     forcing Plaintiff to stay after the traffic stop was over;

b.     coercing Plaintiff to step out of his vehicle after he denied consent for a search;

c.     entering Plaintiff's vehicle without consent;

22

      d.      searching Plaintiff's vehicle without consent;

      e.      impeding Plaintiff's free will to leave after he refused consent.

84.     CITY's policy allowing its sworn law enforcement officers to illegally detain citizens caused the underlying violations of Plaintiff's constitutional rights under the Fourth and Fourteenth Amendments of the United States Constitution.

85.     CITY's failure to implement constitutional policies and discipline its officers evinces a deliberate indifference to the likelihood of ongoing constitutional violations which ultimately resulted in multiple violations of Plaintiff's rights under the United States Constitution.

86.     As a result of the foregoing failures and refusals, CITY, has established a permanent and well-settled policy, practice, and custom to permit officers, including Defendants, TUCKER and MACKENZIE, to illegal detain and search citizens in violation of their constitutional rights.

87.     As a direct and proximate result of these violations of Plaintiff's constitutional rights, he was made to suffer great emotional trauma, discomfort and embarrassment, was deprived of his liberty, his personal and professional reputations were impaired.

88.     Plaintiff demands all relief that is just and equitable, including compensatory damages, punitive damages, costs, and attorney fees.

COUNT 5 UNLAWFUL DETENTION AND SEARCH 42 U.S.C. § 1983 –

TUCKER AND MACKENZIE

89.     Plaintiff realleges Paragraphs 1-54, as if fully set forth herein, and states additionally or alternatively:

90.     At all times mentioned herein, Defendants, TUCKER and MACKENZIE, acted under color of law as a police officer of, and with the authority of, the Defendant CITY.

91.     Defendants, TUCKER and MACKENZIE unlawfully detained and searched Plaintiff in contravention of the Fourth Amendment of the United States Constitution without reasonable suspicion by:

a.      forcing Plaintiff to stay after the traffic stop was over;

b.      coercing Plaintiff to step out of his vehicle after he denied consent for a search;

c.      unlawfully entering Plaintiff's vehicle without consent;

d.      searching Plaintiff's vehicle without consent;

e.      impeding Plaintiff's free will to leave after he refused consent.

92.     As a direct and proximate result of these violations of Plaintiff's constitutional rights, he was made to suffer great emotional trauma, discomfort and embarrassment, was deprived of his liberty, his personal and professional reputations were impaired.

93.    Plaintiff demands all relief that is just and equitable, including compensatory damages, costs, and attorney fees.

<u>COUNT 6 MUNICIPAL LIABILITY 42 U.S.C. § 1983 – CITY OF</u>

<u>DAYTONA BEACH</u>

Plaintiff realleges Paragraphs 1-54, as if fully set forth herein, and states additionally or alternatively:

94.    At all times mentioned herein, Defendants, TUCKER and MACKENZIE, acted under color of law as police officers of, and with the authority of, the Defendant CITY.

95.    Defendants, TUCKER and MACKENZIE, falsely placed Plaintiff under arrest without probable cause that Plaintiff had committed a criminal offense where TUCKER and MACKENZIE detained Plaintiff against his will even though he was free to leave after the traffic stop concluded.

96.    CITY has maintained a custom of allowing its officers to unlawfully search and seize individuals.

97.    CITY's Chief of Police, is it final policy maker, and he was present for the arrest of Plaintiff in a supervisory role when he permitted the officers unlawful conduct.

98.    CITY was aware that it officers had a propensity of effectuating unlawful search and seizures when they are conducting arrests or violating CITY's written policies.

99.    CITY has maintained a custom of ignoring citizens' fundamental Fourth Amendment constitutional rights to be free from unreasonable searches and seizures in the performance of official duties by its sworn law enforcement officers. At all times material hereto, CITY has maintained customs in direct conflict with precedent set forth by the Supreme Court of the United States and the Florida District Courts of Appeals as evidenced by references in Paragraph #17.

100.   CITY's failure to train its officers on illegal detentions and completing truthful arrest affidavits even after its own investigations uncovered that numerous officers have exhibited longstanding conduct of unlawful search and seizures.

101.   As a result of the foregoing, the CITY's training is grossly inadequate to ensure its officers are completing truthful and accurate arrest affidavits and lawfully executing their duties.

102.   CITY's failure to implement training evinces a deliberate indifference to the likelihood of ongoing constitutional violations which ultimately resulted in multiple violations of Plaintiff's rights under the United States Constitution, purportedly authorized by the custom of which is challenged herein.

103.   Plaintiff demands all relief that is just and equitable, including compensatory damages, punitive damages, costs, and attorney fees.

COUNT 7 INVASION OF PRIVACY – TUCKER AND MACKENZIE

104.   Plaintiff realleges Paragraphs 1-54, as if fully set forth herein, and states additionally or alternatively:

105.   At all times mentioned herein, Defendants, TUCKER and MACKENZIE, acted outside the scope of their employment and with malice by:

a. entering the Plaintiff's vehicle after the traffic stop concluded;

b. causing an offensive touching because Plaintiff refused consent to a search of his vehicle;

c. intentionally causing damage to Plaintiff vehicle;

d. attempting to impede Plaintiff from entering his vehicle;

e. attempting to impede Plaintiff from leaving in his vehicle;

f. searching the contents of Plaintiff's vehicle;

e. placing Plaintiff in handcuffs for an unlawful purpose when he had not committed any criminal offense.

g.   fabricated the affidavit to include that Plaintiff caused injuries the Defendants.

h.   causing deprivation of Plaintiff's reasonable expectation of privacy in his vehicle and the contents therein.

27

106.   At all times mentioned herein, Plaintiff was the owner of his vehicle, a he had a reasonable expectation of privacy.

107.   Plaintiff was entitled to a reasonable expectation of privacy when TUCKER and MACKENZIE physically intruded his vehicle, caused his vehicle to crash, and searched the contents therein.

108.   Plaintiff was entitled to a reasonable expectation of privacy when he was removed from his vehicle and unlawfully arrested.

109.   As a direct and proximate result of these violations of Plaintiff's constitutional rights, he was made to suffer great emotional trauma, discomfort and embarrassment, was deprived of his privacy and seclusion, his personal and professional reputations were impaired.

110.   Plaintiff demands all relief that is just and equitable, including compensatory damages, costs, and attorney fees.

<u>COUNT 8 INVASION OF PRIVACY – CITY OF DAYTONA BEACH</u>

111.   Plaintiff realleges Paragraphs 1-54, as if fully set forth herein, and states additionally or alternatively:

112.   At all times mentioned herein, Defendants, TUCKER and MACKENZIE, were acting within the scope of their employment by:

a. entering the Plaintiff's vehicle after the traffic stop concluded;

b. causing an offensive touching because Plaintiff refused consent to a search of his vehicle;

c. intentionally causing damage to Plaintiff vehicle;

d. attempting to impede Plaintiff from entering his vehicle;

e. attempting to impede Plaintiff from leaving in his vehicle;

f. searching the contents of Plaintiff's vehicle;

e. placing Plaintiff in handcuffs for an unlawful purpose when he had not committed any criminal offense.

g. fabricated the affidavit to include that Plaintiff caused injuries the Defendants.

h. causing deprivation of Plaintiff's reasonable expectation of privacy in his vehicle and the contents therein.

106. At all times mentioned herein, Plaintiff was the owner of his vehicle, a he had a reasonable expectation of privacy.

113. Plaintiff was entitled to a reasonable expectation of privacy when TUCKER and MACKENZIE physically intruded his vehicle, caused his vehicle to crash, and searched the contents therein.

114. Plaintiff was entitled to a reasonable expectation of privacy when he was removed from his vehicle and unlawfully arrested.

115. As a direct and proximate result of these violations of Plaintiff's constitutional rights, he was made to suffer great emotional trauma, discomfort and embarrassment, was deprived of his privacy and seclusion, his personal and professional reputations were impaired, and a incurred a deprivation of the use and enjoyment of his vehicle.

116. Plaintiff demands all relief that is just and equitable, including compensatory damages, costs, and attorney fees.

## COUNT 9 INVASION OF PRIVACY 42 U.S.C. § 1983 – TUCKER AND MACKENZIE

117. Plaintiff realleges Paragraphs 1-54, as if fully set forth herein, and states additionally or alternatively:

118. At all times mentioned herein, Defendants, TUCKER and MACKENZIE, acted under color of law as a police officer of, and with the authority of, the Defendant CITY.

119. Defendants TUCKER and MACKENZIE, invaded Plaintiff's reasonable expectation of privacy when they coerced plaintiff from his vehicle, physically entered his vehicle to impede his free will to leave and cause a harmful and offensive contact with his person and damage to his vehicle. Defendants, TUCKER and MACKENZIE, knew or should have known that the search and

seizure was a violation of the Fourth Amendment of the United States Constitution to enjoy a reasonable expectation of privacy in his vehicle.

120.   As a direct and proximate result of these violations of Plaintiff's constitutional rights, he was made to suffer great emotional trauma, discomfort and embarrassment, was deprived of his expectation of privacy, his personal and professional reputations were impaired and he was deprived of the use and enjoyment of his vehicle.

121.   Plaintiff demands all relief that is just and equitable, including compensatory damages, costs, and attorney fees.

COUNT 10 EXCESSIVE FORCE 42 U.S.C. § 1983 – TUCKER AND MACKENZIE

122.   Plaintiff realleges Paragraphs 1-54, as if fully set forth herein, and states additionally or alternatively:

123.   At all times mentioned herein, Defendants, TUCKER and MACKENZIE acted under color of law as police officers of, and with the authority of, the CITY.

124.   Defendants, TUCKER and MACKENZIE, used excessive and unnecessary degree of force against Plaintiff while effectuating an unlawful arrest. Defendants, TUCKER and MACKENZIE, knew or should have known that Plaintiff's rights to be free from unreasonable use of force under the Fourth and

Eighth Amendments of the United States Constitution was violated when Plaintiff was forcefully grabbed, made to forcibly impact a tree and ditch with a sudden stop, causing unconsciousness and instant back pain, and exacerbating his injuries by placing him in handcuffs, as he was being unlawfully arrested.

125.   The level of force employed by Defendants, TUCKER and MACKENZIE, was objectively unreasonable and in violation of Plaintiff's constitutional rights.

126.   As a direct and proximate result of these violations of Plaintiff's constitutional rights, he was made to suffer great emotional trauma, discomfort and embarrassment, was deprived of his liberty and right to be free from cruel and unusual punishment, his personal and professional reputations were impaired.

127.   Plaintiff demands all relief that is just and equitable, including compensatory damages, costs, and attorney fees.

COUNT 11 MALICIOUS PROSECUTION – TUCKER and MACKENZIE

128.   Plaintiff realleges Paragraphs 1-54 as if fully set forth herein.

129.   At all times mentioned herein, Defendants, TUCKER and MACKENZIE, were state actors as police officers and acted under color of law.

130.   On October 23, 2020, Defendants, TUCKER and MACKENZIE, completed a fabricated police report, that Plaintiff committed the crimes of

aggravated battery on a law enforcement officer using a deadly weapon, aggravated fleeing and eluding with serious injury, resisting an officer with violence, or destroying/tampering with physical evidence, trafficking in heroin, possession of THC oil, possession of narcotic paraphernalia, and carrying a concealed electric weapon.

131. Defendants TUCKER and MACKENZIE, instigated the State Attorney's Office and on December 2, 2020, they initiated criminal proceedings against Plaintiff charging plaintiff with 2 counts of aggravated battery on law enforcement officer, aggravated fleeing or attempt to elude with injury, trafficking in heroin or hydromorphone, possession of schedule I substance, resisting an officer without violence, possession of paraphernalia, and carrying a concealed weapon.

132. On December 20, 2020, Defendants TUCKER and MACKENZIE lacked probable cause to initiate criminal proceedings against the Plaintiff for the crimes of 2 counts of aggravated battery on law enforcement officer, aggravated fleeing or attempt to elude with injury, trafficking in heroin or hydromorphone, possession of schedule I substance, resisting an officer without violence, possession of paraphernalia, and carrying a concealed weapon.

133. On December 20, 2020 Defendants, TUCKER and MACKENZIE, acted with malice in initiating criminal proceedings against Plaintiff.  Defendants, TUCKER and MACKENZIE, knew or should have known that initiating the

criminal proceeding was a violation of Plaintiff's rights under the Fourth Amendment to be free from unreasonable seizures.

134.   On October 19, 2021, Defendants TUCKER and MACKENZIE, acted with malice in providing fabricated testimony at the motion to suppress hearing that Plaintiff had caused serious injuries knowing that they had violated his constitutional rights to be from unreasonable search and seizure and had not suffered serious injuries.  TUCKER and MACKENZIE knew or should have known that providing fabricated testimony in the criminal proceeding was a violation of Plaintiff's rights under the Fourth Amendment to be free from unreasonable seizures.

135.   As a direct and proximate result of the Defendant, TUCKER and MACKENZIE's malicious initiation of the criminal proceedings, Plaintiff was arrested and taken to the Volusia County Jail where he remained illegally incarcerated until he was released on bond on October 26, 2021, to the supervision of pre-trial services with conditions of weekly urine analysis

136.   Plaintiff suffered physical pain and mental anguish, together with shock, fright, apprehension, embarrassment, and humiliation, and loss of liberty and freedom.

137.   As a direct and proximate result of the Defendant, TUCKER and MACKENZIE malicious fabrication of the facts, Plaintiff's incarceration continued and he remained illegally incarcerated until he was released on bond on October 26,

2021, to the supervision of pre-trial services with conditions of weekly urine analysis. Plaintiff suffered physical pain and mental anguish, together with shock, fright, apprehension, embarrassment, and humiliation, and loss of liberty and freedom.

138. As a result of the foregoing, Plaintiff is entitled to compensatory damages in a sum to be determined at trial and is further entitled to punitive damages against the individual Defendants in a sum to be determined at trial.

<u>COUNT 12 MALICIOUS PROSECUTION – TUCKER and MACKENZIE</u>

139. Plaintiff realleges Paragraphs 1-54 as if fully set forth herein.

140. At all times mentioned herein, Defendants, TUCKER and MACKENZIE, were state actors as police officers and acted under color of law.

141. On October 23, 2020, Defendants, TUCKER and MACKENZIE, completed a fabricated police report, that Plaintiff committed the crimes of aggravated battery on a law enforcement officer using a deadly weapon, aggravated fleeing and eluding with serious injury, resisting an officer with violence, or destroying/tampering with physical evidence, trafficking in heroin, possession of THC oil, possession of narcotic paraphernalia, and carrying a concealed electric weapon.

142. Defendants TUCKER and MACKENZIE, instigated the State Attorney's Office and on December 2, 2020, they initiated criminal proceedings

against Plaintiff charging plaintiff with 2 counts of aggravated battery on law enforcement officer, aggravated fleeing or attempt to elude with injury, trafficking in heroin or hydromorphone, possession of schedule I substance, resisting an officer without violence, possession of paraphernalia, and carrying a concealed weapon.

143.   On October 19, 2021, Defendants TUCKER and MACKENZIE, acted with malice in providing fabricated testimony at the motion to suppress hearing that Plaintiff had caused serious injuries knowing that they had violated his constitutional rights to be from unreasonable search and seizure and had not suffered serious injuries.  TUCKER and MACKENZIE knew or should have known that providing fabricated testimony to continue the criminal proceeding was a violation of Plaintiff's rights under the Fourth Amendment to be free from unreasonable seizures.

144.   On October 21, 2021, the Honorable Judge Sandra Upchurch granted Plaintiff's Motion to Suppress.

145.   On October 25, 2021, the State Attorney's office continued the criminal proceeding by filing for an appeal to the 5th District Court of Appeals.

146.   On October 25, 202, Defendants TUCKER and MACKENZIE lacked probable cause to continue the criminal proceedings against the Plaintiff for the crimes of 2 counts of aggravated battery on law enforcement officer, aggravated fleeing or attempt to elude with injury, trafficking in heroin or hydromorphone,

possession of schedule I substance, resisting an officer without violence, possession of paraphernalia, and carrying a concealed weapon.

147.   On October 25, 2021, Defendants, TUCKER and MACKENZIE, acted with malice in continuing criminal proceedings against Plaintiff.   Defendants TUCKER and MACKENZIE knew or should have known that continuing the criminal proceeding was a violation of Plaintiff's rights under the Fourth Amendment to be free from unreasonable seizures.

147.   As a direct and proximate result of the Defendant, TUCKER and MACKENZIE's malicious continuation of the criminal proceedings, Plaintiff was released on bond on October 26, 2021, to the supervision of pre-trial services with conditions of weekly urine analysis until January 12, 2022 the state attorney's office filed a no information.

148.   Plaintiff suffered physical pain and mental anguish, together with shock, fright, apprehension, embarrassment, and humiliation, and loss of liberty and freedom.

149.   As a result of the foregoing, Plaintiff is entitled to compensatory damages in a sum to be determined at trial and is further entitled to punitive damages against the individual Defendants in a sum to be determined at trial.

COUNT 13 NEGLIGENCE – CITY OF DAYTONA BEACH

150.   Plaintiff realleges Paragraphs 1-54, as if fully set forth herein, and states additionally or alternatively:

151.   At all times material herein, TUCKER and MACKENZIE were employed by CITY and acting within the scope of their employment as police officers.

152.   On October 23, 2020, TUCKER and MACKENZIE had a duty to provide reasonable care as the custodial officers of Plaintiff.

153.   On October 23, 2020, TUCKER and MACKENZIE failed to act with reasonable care when they:

a.   negligently detained Plaintiff by force and coercion;

b.   used physical force to attempt to remove Plaintiff from his vehicle;

c.   negligently grabbing the Plaintiff's steering wheel while the vehicle was in motion;

d.   negligently creating a safety hazard by physically entering Plaintiff's vehicle to run him off the roadway and cause a violent impact with a tree and sudden stop in a ditch;

e.   failing to render aid to Plaintiff who suffered unconsciousness and sudden back pain;

f.   negligently failing to act reasonably under the circumstances;

g.      negligently engaging in a mode of operations when Defendant knew or should have known, that said mode of operations would result in a dangerous safety hazard for Plaintiff who was in their custody;

h.      negligently engaging in routine or regular practice of business that was not the reasonable custom of the community.

154.   TUCKER and MACKENZIE knew or should've known that Plaintiff was in their custody and failing to provide reasonable care to Plaintiff and placing him in a foreseeable zone of danger would result in his injury.

155.   TUCKER and MACKENZIE's failure to provide reasonable care after placing Plaintiff in a foreseeable zone of danger cause Plaintiff's injuries.

156.   As a direct and proximate cause of Defendants' negligence the Plaintiff suffered severe injuries and resulting pain and suffering, mental anguish, loss capacity for the enjoyment of life, and medical care and treatment; the injuries are either permanent or continuing in nature and Plaintiff will suffer the losses and impairments in the future.

## COUNT 14 VICARIOUS LIABILITY ASSAULT – CITY OF DAYTONA BEACH

157.   Plaintiff realleges Paragraphs 1-54, as if fully set forth herein, and states additionally or alternatively:

158.   TUCKER and MACKENZIE made an intentional, unlawful offer and threat of corporal injury to Plaintiff by force, or force unlawfully directed toward Plaintiff's person when they forced his vehicle to hit a tree and impact a ditch, illegally searched his person, and then arrested him.

159.   TUCKER and MACKENZIE actions created a fear of imminent peril.

160.   TUCKER and MACKENZIE had the apparent present ability to effectuate the attempted action and in fact caused a harmful and offensive contact with Plaintiff's person.

161.   The Defendant, CITY, is legally responsible for the action of its employees, including TUCKER and MACKENZIE, which was committed incident to the employment relationship and within the course and scope of employment.

162.   As a result, Plaintiff suffered bodily injury and resulting pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, loss of earnings, loss of ability to earn money, and/or aggravation of a previously existing condition.  The losses are permanent and continuing and Plaintiff will suffer the losses in the future.

<u>COUNT 15 CONVERSION – TUCKER AND MACKENZIE</u>

163.   Plaintiff realleges Paragraphs 1-54, as if fully set forth herein, and states additionally or alternatively:

164.   On October 23, 2020, TUCKER and MACKENZIE willfully caused damage to Plaintiff's vehicle.

165.   Plaintiff was in possession of his vehicle when TUCKER and MACKENZIE deprived him of the use and enjoyment of his possession.

166.   Plaintiff was using the vehicle for transportation, as well as a place for shelter, and to store his personal belongings.

167.   The vehicle and the personal contents therein was the legal property of Plaintiff.

168.   When Plaintiff was unlawfully arrest the vehicle was towed and Plaintiff was not provided an opportunity to gain possession of the vehicle or the personal contents therein.

169.   The act of damaging the vehicle and having it towed away  is clearly wrongful as there was no legal purpose in impeding Plaintiff's right to leave and there was an unlawful seizure of the vehicle subsequent to Plaintiff's arrest.

170.   At all times material herein, Plaintiff was and is deprived of his legal right to use his vehicle and the personal contents therein.

171.   As a direct and proximate result of the actions by TUCKER and MACKENZIE, Plaintiff suffered and will continue to suffer in the future, lost wages, damage to his reputation, mental pain and suffering, embarrassment, humiliation, deprivation of liberty and property, disgrace, and injury to his good name, loss of

time, loss of use, losses of business and employment opportunity, expenses incurred as a result of unlawful detainment and losses to business reputation.

WHEREFORE, Plaintiff, **KARY JARVIS**, demands that this Court:

a. Enter a judgment declaring the practice and custom pursued by CITY with regard to unlawful arrests and wrongful search and seizures, void, and of no force and effect on the ground(s) set forth in this cause of action;

b. Award judgment for all relief that is just and equitable, including compensatory damages and costs and punitive damages, attorney's fees pursuant to 42 U.S.C. § 1988, costs, and prejudgment interest, against Defendants, TUCKER, MACKENZIE, and CITY, and other such relief deemed proper by the Court. Plaintiff also demands a jury trial on all issues so triable.

RESPECTFULLY submitted this 15th day of FEBRUARY, 2023.

Arthur A. Huggins Jr., Esquire
Huggins Law Firm, PLLC
435 S. Ridgewood Ave. Suite 117
Daytona Beach, FL 32114
T:844.484.4467 F: 1.844.633.7723
arthurhugginslaw@gmail.com
Florida Bar No.: 121864
*Attorney for Plaintiff*



**LAURA E. ROTH**
CLERK OF THE CIRCUIT COURT

SEVENTH JUDICIAL CIRCUIT - VOLUSIA  COUNTY
P.O. BOX 6043 DELAND, FLORIDA 32721-6043 - WWW.CLERK.ORG

Filing #:166900355
Filer:Arthur Huggins
Payment:$0.00

1 Filing Fee: $400.00
2 Summons Issuance: $30.00
3 Complaints/Petitions Complaint: $0.00
4 Complaints/Petitions Civil Cover Sheet: $0.00
5 Complaints/Petitions Request that Summons be Issued: $0.00

*This document is a Clerk generated receipt.  This  page was not included in the original court
document submitted by the filer.*