UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

KARY JARVIS          CASE NO.: 6:23-cv-508-JSS-RMN

    Plaintiff,

v.

CITY OF DAYTONA BEACH,
a Florida Municipal Corporation;
and MARVILLE TUCKER, in his official capacity
and also, individually; and
JAMES MACKENZIE, in his official capacity
and also, individually.

    Defendants.
_____/

## PLAINTIFF'S DAUBERT MOTION TO EXCLUDE THE TESTIMONY OF DEFENDANT'S EXPERT DR. RICHARD HOUGH

COMES NOW the Plaintiff, by and through undersigned counsel, who does hereby file this Daubert Motion to Exclude The Testimony of Defendant's Expert Dr. Richard Hough (hereinafter "Motion") pursuant to Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993), Rule 702 Fed. R. Evid., and the Case Management and Scheduling Order [DE 26] and states as follows:

1.     The Complaint (hereinafter "Complaint") contains the following eight (8) counts:

Count 1 – False Arrest (State Law); Count 2 – False Arrest (42 U.S.C. 1983); Count 3 – False Arrest; Count 4 - Unlawful detention and search (42 U.S.C. 1983); Count

5 – Unlawful detention and search (42 U.S.C. 1983); Count 6 – Municipal Liability (42 U.S.C. 1983); Count 7 – Invasion of Privacy; Count 8 – Invasion of Privacy; Count 9 – Invasion of Privacy (42 U.S.C. 1983); Count 10 – Excessive Force (42 U.S.C. 1983); Count 11 – Malicious Prosecution; Count 12 - Malicious Prosecution; Count 13 – Negligence; Count 14 – Vicarious Liability Assault; Count 15 - Conversion.

2.  Defendant disclosed Dr. Hough as an expert in this case to opine on probable cause and accepted police practices. (Exh. A, Report). Dr. Hough's opinions amount to legal conclusions that will not assist the trier of fact. Therefore, Dr. Hough should be precluded from proffering legal conclusions at trial or any other proceeding.

## MEMORANDUM OF LAW

**A. Dr. Richard Hough's Opinions**

Dr. Hough made the following opinions:

1.  Daytona Beach, Florida has a crime rate significantly higher than average both in Florida, and in the United States. Violent crime has increased, as well as population.

2.  The drug investigation methods in this case conducted by the Named Defendant officers, were objectively reasonable under the totality of the circumstances and followed normal practice and training in such cases.

3.  The tactics by the Named Defendant officers in this case were objectively reasonable under the totality of the circumstances and appropriate and in accordance with training officers receive in Constitutional guidance, state law, case law, DBPD policy, recruit academy training, and law enforcement practices. In this incident, there was no evidence that force was used by officers in any way other than as authorized.

4.  Based on the reports, sworn testimony, and the totality of the circumstances, and regardless of policy, there is no violation of established law, training, or customary practice as officers in Florida are trained. A violation of a department policy is not a Constitutional violation.

5. The Daytona Beach Police Department provides Field Training Officer training and in-service training regarding topics to supplement and extend beyond that which Florida certified law enforcement officers already receive during their Academy training.

6. The official report of DBPD officers in this matter are consistent and agree on the facts and do not contradict physical evidence in the case.

7. Physiological arousal, and physical performance impacts are the norm in high-stress and arrest events. No unexpected or unusual response or actions by officers were noted.

8. I reviewed no information indicating either a pattern or a practice of intentional behavior or official misconduct by officers at the Daytona Beach Police Department.

9. The Office of Professional Standards began an investigation timely upon receipt of Mr. Jarvis' complaint. The investigation was conducted in an industry-normal manner.

10. References to cases without substantive analysis of case facts to provide a basis meaningful comparison is insufficient to assert that a "well-settled practice and custom to permit law enforcement officers…to fabricate evidence and make false arrests in violation of citizens' Constitutional rights…"is represented. Rather, a separate and specific analysis of each listed matter, and a time-series comparison to like agencies would be minimally necessary to try to establish any deviation from a possible norm.

11. The DBPD deputies appropriately summoned EMS and helped transition to a joint law enforcement – EMS effort.

12. The agency tracks arrest incident and reviews them through a standard hierarchical submission through the chain of command. This is industry standard.

13. The Daytona Beach Police Department uses acceptable patrol management methods.

14. I have reviewed the training files of the Named Defendant officers. Each was trained and current in his agency and State certification requirements.

15. The named defendant officers were trained in the policies of the Daytona Beach Police Department and completed required academy and in-service training related to their position and duties.

16. I review no evidence that Daytona Beach Police Department Officer Tucker and Officer Mackenzie disregarded standard practices in the incident under review.

17. The Named Defendant officers were trained in the use of force.

18. Supervisory personnel of the Daytona Beach Police Department routinely review the actions taken by officers during arrest, including those with alleged or actual injury involved.

19. The DBPD Response to Resistance/Blue team report is not required in all arrest incidents.

20. The Daytona Beach Police Department policies provide the necessary and expected broad guidance to members for carrying out law enforcement function and duties.

21. The law enforcement tactics in this case were reasonable and followed standard training in cases involving efforts to investigate drug crime. There was no noted deficiency in the reviewed policies and practices of the Daytona Beach Police Department that would make it apparent that officers would not know how to complete an arrest.

22. Activities of all personnel, including officers, are supported and monitored by supervisors and subject to internal and external agency revies.

23. Daytona Beach Police Department policies and procedures outline the documentation requirements for citizen interactions and arrests. The procedures are standard within contemporary law enforcement.

24. The Daytona Beach Police Department is an accredited agency by the Commission on Florida Accreditation for Law Enforcement Agencies, Inc.

25. To the extent that either named defendant officer had a hand on the wheel of Mr. Jarvis' vehicle, any movement to either direct the car or merely hold on, is not a use of force, and is moot and objectively reasonable under the totality of the circumstances.

Dr. Hough failed to include sufficient facts he used to make his determinations of the legal issues. In his report, Dr. Hough undertakes to tell the jury what result to reach and his testimony should be excluded pursuant to Rule 403.

### B.     Federal Rule of Evidence 702

If scientific, technical, or other specialized knowledge will assist trier of fact to understand the evidence or to determine a fact issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case. *Fed. R. Evid.* 702.

In *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993), the Supreme Court noted that Rule 702 imposes a duty on trial courts to act as "gatekeepers' to insure speculative and unreliable opinions do not reach the jury. *Id.* at 589. In playing this role, the district court must consider whether (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in Daubert; and (3) the testimony assists the tier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue. *Perkins v.*

5

*Tolen*, No. 3:10-cv-851-J-37TEM, 2012 U.S. Dist. Lexis 76127, at *30 (M.D. Fla. June 1, 2012). (quoting *City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F. 3d 548, 562-563 (11th Cir. 1998)). The party offering the expert bears the burden of satisfying each of the three elements by a preponderance of the evidence. *Id*.

### i. Dr. Hough is not qualified to testify competently regarding the matters he intends to address.

In the present case, Dr. Hough has opined to the physiological arousal of the officers in the present case and concluded that "no unexpected or unusual response or actions by officers were noted" (Opinion #7). Importantly, Dr. Hough is not qualified to testify competently as to the physiological response because he has no educational background in these matters. In Schmidt v. City of Bella Villa, 557 F.3d 564, 571 (8th Cir. 2009), the appellate court agreed with the district court conclusion that there was not a close fit between Russo's experiences and the subjects on which his testimony was offered. Russo has experience working as a traffic patrolman, a watch commander, and in organizing security operations for public events. Schmidt, 557 F.3d at 571. As noted by the district court, there was no evidence that Russo had any experience with civil rights violations or with strip searches. Additionally, there was no evidence that Russo had any work experience pertinent to psychology. Id.

In the present case, Dr. Hough's report outlines opinions regarding the investigation conducted by the Office of Professional Standards were conducted in an industry-normal manner (Opinion #9). Further, Dr. Hough purports to establish an opinion that the failure to complete a response to resistance report documenting the physical encounter with Plaintiff was not required (Opinion #19). Also, Dr. Hough opines as to the crime rates in Daytona Beach (Opinion #1). See <u>Plascencia v. City of St. George</u>, No. 2:07-cv-2 TS (D. Utah 03/03/2009) (noting that training and experience which might qualify plaintiff's witness as expert was restricted almost exclusively to police activity in and surround Los Angeles; nothing suggested that he was familiar with conditions of police work or training in Utah). Here, Dr. Hough is not qualified to testify regarding internal investigations and industry standards thereof as he has no professional background in these matters. Moreover, Dr. Hough has no experience or familiarity with the conditions of police work or training in Daytona Beach. Thus, this Court should exclude Dr. Hough from testifying regarding these matters.

    **ii.** **Defendant's expert opinion is not reliable where he fails to use police standards or methodology for how his assertions affects his opinions.**

To assess the reliability of an expert opinion, the court considers a number of factors, including those listed by the Supreme Court in Daubert:

> (1)whether the expert's theory can be or has been tested; (2) whether the theory has been subject to peer review and publication; (3) the known or potential rate of error of the particular scientific technique; and (4) whether the technique is generally accepted in the scientific community. *Id*. (quoting *United States v. Abreu*, 406 F.3d 1304, 1306-07 (11th Cir. 2005)).

However, these are only illustrative and may not all apply in every case. *Id*. Defendant's expert has based his opinions and formulated his assertions without applying the industry standards he has learned during his training and experience, to the facts of this particular case. If the witness is relying solely or primarily on experience, the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts. United States v. Frasier, 387 F.3d 1244, 1261 (11th Cir. 1999). Further, the Defendant's expert fail to articulate how his methodology is supportive in the light of Defendants' conduct in this particular case. Dr. Hough's opinion as to the Defendants' lawful use of a pretextual traffic stop in furtherance of a drug investigation is unreliable. Essentially, there are no facts in the record to establish such an assertion where no Defendant has testified as to such.

The Defendants expert's opinions lack a discernible methodology because, to the extent they are based on his personal experience, there is no indication how his experience led him to conclusions he has reached in his report. Also, the Defendant's expert has failed to cite any industry standards that support his opinions or established that his theories have been subject to peer review or and publication.

In the present case, Defendant's expert has not formulated his opinions and assertions using the law enforcement procedures he has learned during his training and experience. Thus, Defendant's testimony is unreliable.

iii. **The Plaintiff's Expert opinion will assist the trier of fact as to the ultimate issue.**

An opinion is not objectionable just because it embraces an ultimate issue. *Fed. R. Evid*. 704(a). To be admissible under Rule 704 an expert's opinion on an ultimate issue must be helpful to the jury and also must be based on adequately explored legal criteria. *Kobie*, 2014 U.S. Dist. LEXIS 56438 AT *24. (quoting *Haney v. Mizell Memorial Hosp*., 744 F.2d 1467, 1474 (11th Cir. 1984)). Expert testimony on reasonableness of police behavior in light of Fourth Amendment standards is statement of legal conclusions and not admissible. Schmidt v. City of Bella Villa, 557 F.3d 564, 570 (8th Cir. 2009).

In the present case, Defendant's expert opinion will not be helpful to the jury to as to how the Defendants used any accepted police practices or as to what a reasonable officer would do. Further, Dr. Hough's opinions are purely legal conclusions regarding a drug investigations, however the subject case was a traffic stop that concluded at the time the warning was provided to Plaintiff. Moreover, Defendant's expert opinion will tell the jury what legal conclusion they should reach in opinions #1, #2, #3, 4, #6, #8, #9, #11,#17, #18, #19, #21, #22, #23, #25. See

Owen v. Kerr-McGee Corp., 698 F.2d 236, 240 (5th Cir. 1983) ("The Advisory Committee notes make it clear that questions which would merely allow the witness to tell the jury what result to reach are not permitted. Nor is the rule intended to allow a witness to give *legal* conclusions."). Expert opinion is inadmissible when the only connection between the conclusion and the existing data is the expert's own assertions, as we have here. See General Electric v. Joiner, 522 U.S. 136, 146, 139 L. Ed. 2d 508, 118 S. Ct. 512 (1997). This falls short of "general acceptance" prong of reliability. McDowell v. Brown, 392 F.3d 1283, 1300 (11th Cir. 2004).

*Relevancy*

The second prong of the *Daubert* analysis requires that the proposed testimony be relevant. To meet this requirement, the expert testimony must be "'relevant to the task at hand,' … i.e., that it logically advances a material aspect" of the case. *Daubert* at 591. The relevance requirement is not satisfied where the proffered testimony does not assist the trier of fact. Fed.R.Evid. 702. The relationship must be an appropriate "fit" with respect to the offered opinion and the facts of the case. *See Daubert*, 509 U.S. at 591, 113 S. Ct. 2786. Under *Daubert*, scientific testimony does not assist the trier of fact unless the testimony has a justified scientific relationship to the pertinent facts. *See Daubert*, 509 U.S. at 591, 113 S. Ct. 2786. For example, there is no fit where a large analytical leap must be made between the facts and the opinion. *See General Electric Co. v. Joiner*, 522 U.S.

136, 139 L. Ed. 2d 508, 118 S. Ct. 512 (1997) (offering animal studies showing one type of cancer in mice to establish causation of another type of cancer in humans is "simply too great an analytical gap between the data and the opinion offered").

Here, Dr Hough's expert opinion will not be helpful to the jury in assessing what a reasonable officer would have done once they were denied consent for searching Plaintiff's vehicle after the traffic stop ended. For instance, the expert's report omits the fact that the investigatory detention was non-consensual. Dr. Hough will not assist the trier of fact with legal conclusions as to how Defendants' tactics in this case were reasonable and was not unconstitutional as he has not included any articulable facts to determine how he reached such a conclusion notwithstanding an assertion that it was a drug investigation. Thus, Dr. Hough's opinion is not relevant to the facts of this case in determining a legal conclusion that probable cause existed and the Defendants acted reasonably.

## C. Federal Rule of Evidence 403

As with any other testimony, expert testimony that is reliable and relevant may be challenged under Rule 403 on the grounds of prejudice, confusion or waste of time. Fed.R.Evid. 403; see also Frazier, 387 F.3d at 1263 (stating that "sometimes expert opinions that otherwise meet the admissibility requirements of Rule 702 may still be excluded by applying Rule 403.") (footnote omitted). The Supreme Court recognized in *Daubert* the intricate role of Rule 403 in an expert testimony

admissibility analysis when it noted that expert testimony could be 'both powerful and quite misleading because of the difficulty in evaluating it.'" Allison v. McGhan Medical Corp., 184 F.3d 1300, 1310 (11th Cir.1999) (quoting Daubert, 509 U.S. at 595).

D.   **CONCLUSION**

In conclusion, the Defendant's expert opinion should be excluded where the opinion is not based of credible methodology in policing, is unreliable, and will not assist the trier of fact as to the ultimate issue in this case.

**WHEREFORE,** Plaintiff respectfully requests this Court grant Plaintiff's Daubert Motion, to exclude the testimony of Defendant's expert Richard Hough.

CERTIFICATION PURSUANT TO LOCAL RULE 3.01(g)

The undersigned hereby certifies that he has conferred with Defendants' counsel, Brandon Byers, in good faith via telephone and we were unable to resolve the dispute. Defendants' counsel opposes this motion.

CERITIFICATE OF SERVICE

I certify that on this 1st day of May, 2024, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following: Brandon Byers, City of Daytona Beach, P.O.

Box 2451 Daytona Beach, FL 32115; Bruce Bogan,Hilyard, Bogan & Palmer, P.A., 105 East Robinson Street ste. 201 Orlando, FL 32802-4973.

Dated: May 1, 2024

_____

Arthur A. Huggins Jr., Esquire
Huggins Law Firm, PLLC
435 S. Ridgewood Ave. Suite 117
Daytona Beach, FL 32114
T:844.484.4467 F: 1.844.633.7723
arthurhugginslaw@gmail.com
Florida Bar No.: 121864
*Attorney for Plaintiff*