IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

KARY JARVIS,

Case Number 6:23-cv-00508-JSS-RMN

Plaintiff,

v.

CITY OF DAYTONA BEACH, a Florida Municipal Corporation, MARVILLE TUCKER, in his official capacity and also individually, and JAMES MACKENZIE, in his official capacity and also individually,

Defendants.

_____________________________/

## JOINT FINAL PRETRIAL STATEMENT

Pursuant to the Court's Case Management and Scheduling Order (Doc. 26) and Middle District Local Rule 3.06 the parties submit this Joint Final Pretrial Statement.

1. Basis for Court's Jurisdiction:

This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343 because Plaintiff has asserted federal civil rights claims against each Defendant for alleged violations of Plaintiff's rights under the Fourth and Fourteenth Amendments to the United States Constitution. Further, this Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiff's state law claims against Defendants.

2. A Concise Statement of the Action:

This is a civil action brought by the Plaintiff against Defendants. The operative pleading in this case is Plaintiff's Complaint (Doc. 1-1).

Count I is a Florida state law claim alleging false arrest against Defendants City of Daytona Beach, James Mackenzie, and Marville Tucker.

Count II is a claim pursuant to 42 U.S.C. § 1983 alleging false arrest in violation of the Fourth and Fourteenth Amendments to the United States Constitution that occurred pursuant to an official custom, policy, and practice of Defendant City of Daytona Beach.

Count III is a claim pursuant to 42 U.S.C. § 1983 alleging false arrest in violation of the Fourth and Fourteenth Amendments to the United States Constitution against Defendants James Mackenzie and Marville Tucker.

Count IV is a claim pursuant to 42 U.S.C. § 1983 alleging unlawful detention and search in violation of the Fourth and Fourteenth Amendments to the United States Constitution that occurred pursuant to an official custom, policy, and practice of Defendant City of Daytona Beach.

Count V is a claim pursuant to 42 U.S.C. § 1983 alleging unlawful detention and search in violation of the Fourth and Fourteenth Amendments to the United States Constitution against Defendants James Mackenzie and Marville Tucker.

Count VI is a claim pursuant to 42 U.S.C. § 1983 alleging violations of the Fourth and Fourteenth Amendments to the United States Constitution that occurred pursuant to an official custom, policy, and practice of Defendant City of Daytona Beach.

Count VII is a Florida state law claim alleging invasion of privacy against Defendants James Mackenzie and Marville Tucker.

Count VIII is a Florida state law claim alleging invasion of privacy against Defendant City of Daytona Beach.

Count IX is a claim pursuant to 42 U.S.C. § 1983 alleging invasion of privacy in violation under the Fourth Amendment to the United States Constitution against Defendants James Mackenzie and Marville Tucker.

Count X is a claim pursuant to 42 U.S.C. § 1983 alleging excessive force in violation under the Fourth and Eighth Amendments to the United States Constitution against Defendants James Mackenzie and Marville Tucker.

Count XI is a hybrid claim pursuant to federal and Florida state law alleging malicious prosecution in violation of the Fourth Amendment to the United States Constitution against Defendants James Mackenzie and Marville Tucker.

Count XII is a hybrid claim pursuant to federal and Florida state law alleging malicious prosecution in violation of the Fourth Amendment to the

United States Constitution against Defendants James Mackenzie and Marville Tucker.

Count XIII is a Florida state law claim alleging negligence against Defendant City of Daytona Beach.

Count XIV is a Florida state law claim alleging assault against Defendant City of Daytona Beach.

Count XV is a Florida state law claim alleging conversion against Defendants James Mackenzie and Marville Tucker.

Defendants have denied each and every allegation of Plaintiff's claims. Defendants have asserted that probable cause existed for Plaintiff's arrest and that the use of force was reasonable and justified under the circumstances. As to Plaintiff's myriad state law claims, Defendants have asserted that each claim fails to state a cause of action or Defendants have denied Plaintiff is entitled to any relief under Florida law. The individual Defendants have asserted the defense of qualified immunity under federal law and statutory immunity under Florida law pursuant to § 768.28, Fla. Stat. Defendant City of Daytona Beach has denied liability for the alleged claims under both federal and Florida law.

3. <u>A Concise Statement of Each Party's Position:</u>

A. <u>Plaintiff's Position</u>:

On or about October 23, 2020, Tucker and Mackenzie were dispatched in reference to an anonymous narcotics complaint around 4:50 p.m., at an apartment complex, describing foot traffic to and from a dark colored vehicle. The anonymous caller provided a description of a white male tattoos on arms, red tank top, black basketball shorts with white shoes. Tucker observed Plaintiff, travelling in a blue Mitsubishi, leaving the area and followed him to the gas station. Plaintiff went inside the store, then returned to his vehicle to pump gas. Plaintiff who was wearing a green shirt, tan cargo shorts, and a brown hat with sunglasses did not match the description provided by the anonymous caller. Mackenzie confirmed that the tag and vehicle were registered to the Plaintiff. Next, Tucker allegedly observed Plaintiff fail to stop at the stop sign as he exited.

Tucker conducted the traffic stop and was backed up by Mackenzie. At some point, while behind Plaintiff, Tucker allegedly observed furtive movements "specifically by the steering wheel and middle console". Plaintiff provided Tucker his valid driver's license and information and Tucker returned to his vehicle to proceed with tasks tied to the infraction. Mackenzie stood on Plaintiff's passenger side engaging him in discussion pertaining to the contents of his vehicle and other miscellaneous questions. Mackenzie didn't have a concern for his safety and was comfortable with Plaintiff sitting his vehicle and had no intentions to remove him or search his vehicle. After approximately eight (8) minutes, Tucker returned to

Plaintiff's vehicle and explained that he is receiving a warning citation and provides Plaintiff with his license and registration documents.

At this time, Tucker asked if he could search Plaintiff's vehicle and Plaintiff expressly denied consent. Tucker continued to prolong the stop, and indicating to Plaintiff he was "just asking, you know, see what we can get into". In response, Plaintiff again expressly denied consent. Subsequently, Mackenzie interjects telling Plaintiff he had to let them search "per case law" because Tucker had observed furtive movements prior to stopping Plaintiff. Therefore, according to Mackenzie Plaintiff was required to let them search the area where Plaintiff was sitting. Over Plaintiff's objections, Tucker opened the Plaintiff's front door and Mackenzie instructed him to undo his seatbelt. Plaintiff complied and acquiesced to them searching the specific area, as he exited his vehicle.

Mackenzie joined Tucker at Plaintiff's driver side door and instructed Plaintiff to stand behind his vehicle near Tucker's vehicle while he conducted the search. Mackenzie asserts he did so out of concern for officer safety when Plaintiff was outside the car, but did not search Plaintiff's person. At this time, Plaintiff requested to speak with a supervisor while still standing outside of his vehicle. Plaintiff's requests were denied and Plaintiff retreated back to his vehicle. Mackenzie and Tucker then threatened Plaintiff with arrest before grabbing Plaintiff's body and attempting to pull him out of his vehicle. At this time, Plaintiff

attempted to leave in his vehicle and Mackenzie fell to the ground while Tucker held on to Plaintiff's vehicle. At some point, Tucker grabbed the steering wheel causing Plaintiff to lose control and veer to the left crashing into a ditch. Tucker then pulled out his gun while Plaintiff lay in the ditch injured from the crash and yelling "you tried to kill me".

Next, Tucker pulled Plaintiff from the ditch and shoved him around, further exacerbating his injuries, before placing him in handcuffs. Multiple officers, including Tucker and Mackenzie, conducted a search of Plaintiff's vehicle while he was already in custody. All of Plaintiff's possessions was in the vehicle due to him being homeless at the time. Plaintiff's vehicle, and all of his possession, was towed.

The Florida State Attorney's office filed an information on December 2, 2020. Plaintiff was charged with 2 counts of aggravated battery on law enforcement officer, aggravated fleeing or attempt elude with injury or property damage, trafficking in heroin or hydromorphone, possession of schedule I substance, resisting an officer without violence, possession of paraphernalia, and carrying a concealed weapon.

October 21, 2021, the Honorable Judge Sandra Upchurch granted Plaintiff's motion to suppress ruling that Tucker and Mackenzie violated Plaintiff's constitutional rights under the Fourth Amendment. The Florida State Attorney's

office filed an appeal on October 25, 2021. On October 26, 2021, Plaintiff was ordered pretrial release with special conditions of weekly urine analysis. On January 7, 2022, the District Court of Appeal ordered that the Appellant's Notice of Voluntary Dismissal was accepted and the cause was dismissed. On January 11, 2022, the State of Attorney's office entered a Nolle Prosequi dismissing the charges of aggravated battery on law enforcement officer, aggravated fleeing or attempt elude with injury or property damage, trafficking in heroin or hydromorphone, possession of schedule I substance, resisting an officer without violence, possession of paraphernalia, and carrying a concealed weapon. On January 12, 2022, the State Attorney's office filed a no information for the last charge of tampering with evidence.

Once released from jail, Plaintiff filed a citizen's complaint against Tucker and Mackenzie. As a result, the Office of Professional Standards opened an investigation. The CITY's Office of Professional Standards found that MACKENZIE violated its directives and concluded: At the time of the incident Officer Mackenzie did not understand that the traffic stop was concluded once the written warning was issued. Mr. Jarvis was within his right to refuse a search of his vehicle and any further detention of Mr. Jarvis was unlawful. The investigation revealed Tucker would have also had directives 200.30 and 654.13 sustained

against him if he was still an employee but he was terminated as a result of another incident involving excessive use of force.

B. Defendant's Position:

On October 23, 2020, Defendants James Mackenzie and Marville Tucker were dispatched to an apartment complex to investigate a report of a black or navy blue Mitsubishi engaged in possible narcotics activity in the parking lot. As Defendant Tucker drove his police vehicle to the apartment complex to investigate, Defendant Tucker passed a blue Mitsubishi SUV, which Defendants Mackenzie and Tucker later learned was being driven by Plaintiff, on the side street near the apartment complex. Defendant Tucker turned around and followed the vehicle to a nearby RaceTrac gas station. Defendant Mackenzie also arrived to the RaceTrac gas station shortly thereafter.

After Plaintiff pumped gas and bought items at RaceTrac, Plaintiff went into his vehicle and exited onto Ridgewood Avenue. As Plaintiff left RaceTrac, Defendant Tucker observed Plaintiff's vehicle fail to make a complete stop behind the stop bar while turning onto Ridgewood Avenue, in violation of the Florida Uniform Traffic Code. Defendant Tucker followed Plaintiff's vehicle, with Defendant Mackenzie directly behind Defendant Tucker in his police vehicle, and Defendant Tucker activated his lights and siren after Plaintiff made a left turn from Ridgewood Avenue onto Beville Road. Prior to activating his lights and siren,

Defendant Tucker also observed Plaintiff make furtive movements inside the vehicle near the front console or dash as well as the side console. Plaintiff pulled over to the side of the road and stopped his vehicle.

Defendant Tucker approached Plaintiff's driver's door while Defendant Mackenzie went to Plaintiff's front passenger side door. After a brief conversation, Plaintiff confirmed that he was at the apartment complex to which Defendants were dispatched. Defendant Tucker retrieved Plaintiff's license and driving documents and went back to his police vehicle. Defendant Mackenzie waited by Plaintiff's door and observed a knife in the center console of Plaintiff's vehicle. Defendant Mackenzie also learned from Plaintiff that he was a convicted drug dealer that had been released from prison several months ago.

After Defendant Tucker returned to Plaintiff's vehicle, he gave back Plaintiff's license and issued Plaintiff a written warning for his traffic violation. Defendant Tucker asked Plaintiff if Defendants could search Plaintiff's vehicle to which Plaintiff demurred. Defendant Mackenzie then advised Plaintiff that they wanted to search Plaintiff's vehicle because Defendant Tucker observed Plaintiff make furtive movements inside his vehicle. Defendant Mackenzie ordered Plaintiff out of the vehicle. Plaintiff exited his vehicle and began arguing with Defendants. Eventually, Plaintiff went back into his vehicle without allowing Defendants to search the areas Defendant Tucker observed the furtive movements.

Defendants attempted to physically remove Plaintiff from the vehicle, but Plaintiff shouted, "Fuck, y'all," and drove off while both Defendants were hanging onto to Plaintiff, Plaintiff's vehicle, or both. Defendant Mackenzie fell off the vehicle and landed on the street pavement. Defendant Tucker held on until Plaintiff eventually crashed the vehicle into a ditch further down the street. Both Defendant Tucker and Mackenzie were injured by Plaintiff's actions.

Defendants placed Plaintiff under arrest and eventually searched Plaintiff's vehicle. Inside the vehicle, Defendants located a bag of heroin, scales, multiple knives, a THC vape pen, and baggies. Plaintiff was transported to Halifax Hospital, evaluated by medical staff, cleared for transport, and booked into the Volusia County Jail.

Plaintiff did not request or receive treatment for any alleged injuries resulting from his arrest while in Volusia County Jail. Plaintiff's vehicle was impounded by a wrecker service and not held by the Defendant City as evidence. Plaintiff never attempted to retrieve the vehicle or the items left inside the vehicle. All the items taken from Plaintiff's person were held by Defendant City. After Plaintiff's release from jail, Plaintiff retrieved those items from Defendant City.

Plaintiff never treated for his alleged injuries until several months after his release from jail. Plaintiff worked for a landscape company during that time.

Plaintiff was eventually arrested again for narcotics and sentenced to prison, where he remains until October, 2025.

Notwithstanding that Defendants Tucker and Mackenzie did not violate Plaintiff's constitutional rights, Defendant City did not have a custom, policy, or practice of unlawfully arresting citizens, using excessive force, or violating any constitutional rights. Further, there is no evidence of any custom, policy, or practice to support that Defendant City was the moving force of Plaintiff's detention and subsequent arrest. Finally, to the extent that Plaintiff claims a violation of Florida state law, Defendant City asserts its immunity under § 768.28, Fla. Stat.

4. A List of Each Exhibit with Notations of Each Objection:

A. Plaintiff – Plaintiff list attached as A.

B. Defendants – Defendants' list attached as Exhibit B.[1]

| | |
|---|---|
| A | Authenticity |
| B | Inadmissible |
| R | Relevance |
| H | Hearsay |
| P | Privilege |
| UP | Undue Prejudice |
| NPP | Not previously produced |

[1] Defendant objects to Plaintiff's codes.

5. A List of Each Witness by Name Only with Notation of the Likelihood that Each Witness Will Testify and Objection to Each Witness Testifying

A. Plaintiff – Plaintiff list attached as Exhibit C.

B. Defendants – Defendants' list attached as Exhibit D.

C. Plaintiff's Deposition Designation of Joseph Cerce and Jakari Young attached as Exhibit E.

6. A List of Each Expert with Substance of the Testimony and Notation of Any Objections

A. Plaintiff:

1. Thomas Tiderington – Law enforcement practices and industry standards.

2. Anthony Howe D.C. – Causation, Damages, Permanency of Injury, Future Treatment and Costs.

3. Mark Timken – Causation, Damages, Permanency of Injury.

4. Bryan Thomas, M.D. – Causation, Impairment, Damages, Future Treatment and Costs.

B. Defendants:

Retained Experts:

1. Dr. Richard Hough, Jr.
Police Practices and Procedure Expert

Non- Retained Experts:

1. Dr. Maureen Suchenski
Emergency room physician who observed and treated Plaintiff on the night of his arrest

2. Dr. Jessika Gil-Peneda
Licensed Medical Doctor at Volusia County Jail who observed and treated Plaintiff

3. Gustavo Guzman
Licensed Mental Health Counselor at the Volusia County Jail who evaluated Plaintiff during his incarceration

7. <u>Breakdown of the Type and Amount of Monetary Damages:</u>

A. <u>Plaintiff</u>: Plaintiff is entitled to economic damages incurred for past medical expenses in the amount of $37, 422.00 and medical expenses to be incurred in the future in the amount of $300,000.00. Plaintiff is entitled to compensatory damages under 42 U.S.C. § 1983 and pendent state law claims for mental anguish, together with shock, fright, apprehension, embarrassment, and humiliation, and loss of liberty and freedom, physical impairment, inconvenience, aggravation of a disease or physical defect in the amount of $1,000,000. In an action for malicious prosecution, Plaintiff may recover all damages that are the natural and probable consequences of the action complained of. Ware v. United States, 971 F. Supp. 1442, 1470 (M.D. Fla. 1997). Plaintiff seeks $22,880 yearly loss of income. Plaintiff seeks $4,000.00 loss of vehicle. Plaintiff seeks $21,600 for loss of personal property in vehicle. Plaintiff seeks at least $1,000,000 as to 369 days of incarceration; damage to reputation; loss of enjoyment; arrest record remains unsealed; violation of constitutional rights; loss of earning capacity sustained in the past and to be sustained in the future. Plaintiff seeks $6,000,000 in punitive damages under 42 U.S.C. § 1983 and state law malicious prosecution claim as to 369 days of incarceration with malicious intent to prosecute. To be determined by the jury.

Attorney's fees are awarded to the prevailing party under 42 U.S.C. 1988. As such, there are no caps on the fee awarded and the fee shall be determined by the Court.

B. <u>Defendants</u>: None

8. <u>A List of Each Deposition Offered in Lieu of Live Testimony Unless the Deposition is Only for Impeachment:</u>

Plaintiff intends to read/play videotaped depositions of:

Joseph Cerce

Jakari Young

Defendants object to the deposition of Joseph Cerce being read in lieu of live testimony as plaintiff has not established he is unavailable to testify.

Defendants object to the deposition of Chief Jakari Young as he was not the final policy-maker for the City of Daytona PD prior to or on the date of the occurrence,

9. Statement of Each Fact Admitted:

A. Admit that Defendants James Mackenzie and Marville Tucker were at all material times employed as law enforcement officers for the City of Daytona Beach.

B. Admit that Defendants James Mackenzie and Marville Tucker were each acting under the color of law during the detention and arrest of the Plaintiff on October 20, 2020.

10. Concise Statement of Each Agreed Principle of Law:

A. Plaintiff's 42 U.S.C. § 1983 claims against Defendants James Mackenzie and Marville Tucker are governed by the Fourth and Fourteenth Amendments to the United States Constitution and all applicable case law.

B. Plaintiff's 42 U.S.C. § 1983 claims against Defendant City of Daytona Beach are governed by the principles set forth in *Monell v. Department of Social*

*Services of New York*, 436 U.S. 658, 690 (1978), *City of Canton v. Harris*, 489 U.S 378 (1989), and their related progeny.

C. Plaintiff's state law claims are governed by Florida law, including, but not limited to, § 768.28, Fla. Stat.

D. This Court has jurisdiction over the subject matter.

E. The Fourth Amendment's reasonableness standard governs the § 1983 4th Amendment claims against the individual law enforcement defendants.

11. <u>Concise Statement of Each Issue of Fact:</u>

A. Plaintiff's Statement of Issues:[2]

a) Whether, as to the § 1983 claims against the City of Daytona Beach, the City failed to adequately train its officers regarding unlawful search and seizures or completing truthful arrest affidavits and whether failure amounted to gross negligence or deliberate indifference to Plaintiff's constitutional rights.

b) Whether, as to § 1983 against City of Daytona Beach, Plaintiff was unlawfully arrested due to the City permitting, encouraging, and tolerating its officers to engage in misconduct and make arrests without probable cause.

c) Whether, as to § 1983 against James Mackenzie and Marville Tucker there was malice as to the instigation of criminal proceedings for each count against Plaintiff and providing fabricated testimony at the motion to suppress hearing that Plaintiff had caused serious injuries knowing that they had violated his constitutional rights and had not suffered serious injuries.

d) Whether, as to § 1983 against James Mackenzie and Marville Tucker, there was malice where there was a lack of probable cause for each count to continue the criminal proceedings against the Plaintiff.

[2] Defendants object to Plaintiff's Statement of Issues of Facts and does not agree that these are factual issues to be resolved by the jury.

e) Whether Mackenzie and Tucker were acting within the scope of their employment at all times material to traffic stop and arrest.

f) Whether Mackenzie and Tucker failed to act with reasonable care and placed Plaintiff in a foreseeable zone of danger while Plaintiff was in their custody.

g) Whether Tucker and Mackenzie made an intentional, unlawful offer and threat of corporal injury to Plaintiff by forcing him out of his vehicle and threatening arrest before causing him to crash his vehicle and arresting him.

h) Whether Tucker and Mackenzie falsely arrested Plaintiff without probable cause or arguable probable cause.

i) Whether Tucker and Mackenzie unreasonable prolonged the traffic stop in violation of Plaintiff's constitutional rights.

j) Whether Tucker and Mackenzie impeded Plaintiff's free will to leave after Plaintiff refused consent.

k) Whether Tucker and Mackenzie unlawfully entered Plaintiff's vehicle without his consent and invaded his privacy.

l) Whether, as to § 1983 against City of Daytona Beach, Plaintiff was unlawfully arrested due to the City permitting, encouraging, and tolerating its officers to engage in unlawful detention and searches in contravention of the Fourth Amendment of the United State Constitution.

m) Whether Mackenzie and Tucker lacked reasonable suspicion to prolong the traffic stop and force Plaintiff to step out of his vehicle after he denied consent for a search.

n) Whether the conduct of Defendants' taking possession of, and towing, Plaintiff's vehicle and personal property was a conversion.

o) Whether Plaintiff is entitled to punitive damages.

p) Whether Plaintiff is entitled to equitable and/or injunctive relief.

B: Defendants' Concise Statement of Each Issue of Fact: [3]

A. If Defendants James Mackenzie, Marville Tucker, or both, committed a constitutional violation against Plaintiff, whether a custom, policy, or practice of the Defendant City of Daytona Beach was the moving force behind the alleged constitutional deprivation.

B. If Defendants violated Plaintiff's constitutional rights under Federal law, committed a Florida law violation, or both, whether Plaintiff suffered damages as a result.

C. If Plaintiff suffered damages, the amount of such damages.

D. If Defendants violated Florida law, whether Defendants Tucker, Mackenzie, or both, committed an act or omission in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.

E. Whether Defendants James Mackenzie, Marville Tucker, or both, had reasonable suspicion to detain Plaintiff.

F. Whether there was arguable or actual probable cause for Defendants James Mackenzie, Marville Tucker, or both, to arrest Plaintiff.

G.. Whether Plaintiff was subjected to the use of excessive force under the circumstances.

[3] Plaintiff objects to Defendants' Statement of Issues of Fact

12. Defendants' Concise Statement of Each Issue of Law:

A. Whether Defendants James Mackenzie, Marville Tucker, or both, are entitled to qualified immunity.

B. Whether the actions taken by Defendants Tucker, Mackenzie, or both, were objectively reasonable under the circumstances.

C. Whether Defendants Tucker, Mackenzie, or both, knowingly or intentionally violated clearly established law.

D. Whether, as to § 1983 against the City of Daytona Beach, an official policy, custom, or practice, and/or failure to discipline officers of the City was the moving force of any Constitutional violations suffered by the Plaintiff.

Defendants object to this issue of law.

13. A List of Pending Motions or Unresolved Issues:

A. Defendant City of Daytona Beach's Motion for Summary Judgment. (Doc. 91)

B. Defendants James Mackenzie's and Marville Tucker's Motion for Summary Judgment (Doc. 88) .

C. Plaintiff's Motion for Summary Judgment. (Doc. 72)

14. A Statement of the Usefulness of Further Settlement Discussions:

The parties previously conducted mediation on February 27, 2024, which resulted in an impasse. The parties conferred but were unable to reach an

agreement as to whether it would be beneficial to conduct further settlement discussions.

15. The parties will re-submit instructions and verdict forms within 3 business days of the trial set to begin on October 28, 2024, pursuant to the Pretrial Requirements indicated under Judge Sneed's Trial Management Preferences.

Dated: August 19, 2024.


***/s/ Bruce R. Bogan***
Bruce R. Bogan, Esq.
Florida Bar Number 599565
Hilyard, Bogan and Palmer, P.A.
105 East Robinson Street, Suite 201
Orlando, Florida 32801
Telephone: (407) 425-4251
Fax: (407) 841-8431
bbogan@hilyardlawfirm.com

***/s/ Arthur A. Huggins, Jr.***
Arthur A. Huggins, Jr., Esq.
Florida Bar Number 121864
Huggins Law Firm, PLLC
435 S. Ridgewood Avenue, Suite 117
Daytona Beach, Florida 32114
Telephone: (844) 484-4467
Fax: (844) 633-7723
arthurhugginslaw@gmail.com

***/s/ David M.D. Russell***
David M.B. Russell, Esq.
Florida Bar Number 93634
The City of Daytona Beach
P.O. Box 2451
Daytona Beach, Florida 32115
Telephone: (386) 671-8040
Fax: (386) 671-8049
russelldavid@codb.us
barnettlisa@codb.us

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 19th day of August, 2024, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send notice of electronic filing to the following: Arthur A. Huggins, Jr., Esq., Huggins Law Firm, PLLC, 435 S. Ridgewood Avenue, Suite 117, Daytona Beach, Florida 32114, and David M.B. Russell, Esq., The City of Daytona Beach, P.O. Box 2451, Daytona Beach, Florida 32115.

*/s/ Bruce R. Bogan*
Bruce R. Bogan, Esq.
Florida Bar Number 599565
Hilyard, Bogan and Palmer, P.A.
105 East Robinson Street, Ste 201
Orlando, Florida 32801
Telephone: (407) 425-4251
Fax: (407) 841-8431
bbogan@hilyardlawfirm.com
Attorney for Defendants,
Marville Tucker and James
Mackenzie