**UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT**

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

David J. Smith
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

February 06, 2026

MEMORANDUM TO COUNSEL OR PARTIES

Appeal Number: 24-13456-GG
Case Style: Kary Jarvis v. City of Daytona Beach, et al
District Court Docket No: 6:23-cv-00508-JSS-RMN

Opinion Issued
Enclosed is a copy of the Court's decision issued today in this case. Judgment has been entered today pursuant to FRAP 36. The Court's mandate will issue at a later date pursuant to FRAP 41(b).

Petitions for Rehearing
The time for filing a petition for panel rehearing or rehearing en banc is governed by 11th Cir. R. 40-2. Please see FRAP 40 and the accompanying circuit rules for information concerning petitions for rehearing.

Costs
Costs are taxed against Appellant(s) / Petitioner(s).

Bill of Costs
If costs are taxed, please use the most recent version of the Bill of Costs form available on the Court's website at www.ca11.uscourts.gov. For more information regarding costs, see FRAP 39 and 11th Cir. R. 39-1.

Attorney's Fees
The time to file and required documentation for an application for attorney's fees and any objection to the application are governed by 11th Cir. R. 39-2 and 39-3.

Appointed Counsel
Counsel appointed under the Criminal Justice Act (CJA) must submit a voucher claiming compensation via the eVoucher system no later than 45 days after issuance of the mandate or the filing of a petition for writ of certiorari. Please contact the CJA Team at (404) 335-6167 or cja_evoucher@ca11.uscourts.gov for questions regarding CJA vouchers or the eVoucher system.

Clerk's Office Phone Numbers

| | | | |
|---|---|---|---|
| General Information: | 404-335-6100 | Attorney Admissions: | 404-335-6122 |
| Case Administration: | 404-335-6135 | Capital Cases: | 404-335-6200 |
| CM/ECF Help Desk: | 404-335-6125 | Cases Set for Oral Argument: | 404-335-6141 |

NOT FOR PUBLICATION

In the

# United States Court of Appeals

For the Eleventh Circuit

---

No. 24-13456
Non-Argument Calendar

---

KARY JARVIS,

*Plaintiff-Appellee-Cross Appellant,*

*versus*

CITY OF DAYTONA BEACH,
a Florida Municipal Corporation,

*Defendant-Cross Appellee,*

MARVILLE TUCKER,
in his official capacity and also, individually,
JAMES MACKENZIE,
in his official capacity and also, individually,

*Defendants-Appellants-Cross Appellees.*

---

Appeals from the United States District Court
for the Middle District of Florida
D.C. Docket No. 6:23-cv-00508-JSS-RMN

---

Before KIDD, ANDERSON, and WILSON, Circuit Judges.

PER CURIAM:

Marville Tucker and James Mackenzie appeal the district court's denial of their motion for summary judgment on several claims and Kary Jarvis cross-appeals the court's denial of his motion for summary judgment. We address each issue in turn. We write only for the parties who are already familiar with the facts. For that reason, we include only such facts as are necessary to understand our opinion.

I. FACTS

Jarvis alleged the following relevant facts. Tucker and Mackenzie, city police officers, conducted a traffic stop of Jarvis's vehicle while dispatched pursuant to an anonymous tip. After concluding the traffic stop and delivering Jarvis a written warning, the Officers asked Jarvis for consent to search his vehicle, which he declined, but they attempted to search his vehicle anyway. During the Officers' search, Jarvis started driving the vehicle. Tucker and Mackenzie attempted to stop Jarvis from driving away, causing Tucker to hang from the moving vehicle, and ultimately causing the car to veer off the road and crash into a tree. Jarvis was arrested, his car was subject to an inventory search, and he was later charged with aggravated battery on a law enforcement officer, aggravated fleeing, resisting an officer with violence, destroying/tampering with physical evidence, possession of THC oil, possession of narcotic paraphernalia, and carrying a concealed electric weapon. A state court judge granted Jarvis's motion to suppress

the evidence obtained from the search and the state's attorney general officer terminated the criminal proceedings against Jarvis in his favor.

Jarvis filed suit against Tucker, Mackenzie, and the City of Daytona Beach, asserting a total of fifteen claims against the defendants under both federal and state law. Specifically, he asserted claims for false arrest under state and federal law; unlawful detention and search; municipal liability; state and federal invasion of privacy; excessive force; malicious prosecution under both state and federal law; negligence; vicarious liability assault; and conversion. All parties moved for summary judgment. The district court granted the City's motion, denied Jarvis's motion, and granted in part and denied in part the motion filed by Tucker and Mackenzie. Tucker and Mackenzie appealed the district court's order and Jarvis filed a cross-appeal against both the Officers and the City.

## II. JURISDICTION

This Court issued jurisdictional questions asking the parties to address (1) whether this Court has jurisdiction over Tucker and Mackenzie's appeal from the district court's October 19 summary judgment order, and (2) whether this Court should exercise pendent appellate jurisdiction over Jarvis's cross-appeal. On the same day that this Court issued its jurisdictional questions in this case, Tucker and Mackenzie moved to dismiss Jarvis's cross-appeal for lack of jurisdiction. They argue that their interlocutory appeal may proceed immediately prior to the entry of a final judgment

because it concerns the district court's denial of their immunity defenses as to Counts 5, 12, and 15. They contend that this exception—allowing an interlocutory appeal for denials of qualified immunity—does not extend to Jarvis's cross-appeal and that his appeal is premature in the absence of a final judgment. Accordingly, Tucker and Mackenzie ask this Court to dismiss Jarvis's cross-appeal for lack of jurisdiction. Jarvis responds to the motion to dismiss that this Court has jurisdiction over his cross-appeal "pursuant to the doctrine of pendent appellate jurisdiction." He argues that the immunity issues raised in Tucker and Mackenzie's appeal are "sufficiently related to and intertwined with" his cross-appeal, such that this Court has jurisdiction over the cross-appeal.

Appellate jurisdiction is generally limited to final decisions of the district courts. 28 U.S.C. § 1291; *see also CSX Transp., Inc. v. City of Garden City*, 235 F.3d 1325, 1327 (11th Cir. 2000) (stating that an order is appealable if it is either final or falls into a specific class of interlocutory orders made appealable by statute or jurisprudential exception). "A final decision is typically one that ends the litigation on the merits and leaves nothing for the court to do but execute its judgment." *Acheron Cap., Ltd. v. Mukamal*, 22 F.4th 979, 986 (11th Cir. 2022) (quotation marks omitted). An order that disposes of fewer than all claims against all parties to an action is generally not final or immediately appealable. *Supreme Fuels Trading FZE v. Sargeant*, 689 F.3d 1244, 1246 (11th Cir. 2012).

Under the collateral order doctrine, a non-final order may be appealed if it (1) conclusively determines a disputed question,

(2) resolves an important issue completely separate from the merits of the action, and (3) would be effectively unreviewable on appeal from a final judgment. *Plaintiff A v. Schair*, 744 F.3d 1247, 1252–53 (11th Cir. 2014). An order denying qualified immunity at the summary judgment stage is immediately appealable to the extent the denial turns on an issue of law. *Behrens v. Pelletier*, 516 U.S. 299, 306–07, 311 (1996). An interlocutory appeal from the denial of qualified immunity must raise legal issues such as "whether the legal norms allegedly violated by the defendant were clearly established at the time of the challenged actions." *English v. City of Gainesville*, 75 F.4th 1151, 1155 (11th Cir. 2023). When that issue is appealed, the factual issue of what the conduct was "may be addressed by an appellate court because it is a part of the core qualified immunity analysis." *Johnson v. Clifton*, 74 F.3d 1087, 1091 (11th Cir. 1996); *see also English*, 75 F.4th at 1156 ("When both core qualified immunity issues are involved, we have jurisdiction . . . ."). The issue of "whether the plaintiff has asserted a violation of a constitutional right at all" is also a legal issue subject to interlocutory review. *Cottrell v. Caldwell*, 85 F.3d 1480, 1485 (11th Cir. 1996).

However, if the only issues appealed are evidence sufficiency issues, such as whether the district court erred in determining that there was an issue of fact for trial regarding the defendant's actions, then this Court lacks jurisdiction to review the denial of immunity. *English*, 75 F.4th at 1155–56; *Behrens*, 516 U.S. at 312–13 (noting that an immediate appeal is not permitted if the issue "is nothing more than whether the evidence could support a finding that particular conduct occurred"). In other words, this Court does

not have jurisdiction to entertain interlocutory appeals from the denial of qualified immunity when the defendant's argument is merely, "I didn't do it." *Bryant v. Jones*, 575 F.3d 1281, 1294 n.19 (11th Cir. 2009). Nevertheless, where an appeal from an order denying qualified immunity includes both factual and legal issues, this Court has jurisdiction to consider it under the collateral order doctrine. *See English*, 75 F.4th at 1155–56. For example, even when a district court states that it based the denial of qualified immunity on the existence of genuine issues of material fact, this Court has jurisdiction when the issue on appeal is a purely legal question. *Moniz v. City of Fort Lauderdale*, 145 F.3d 1278, 1281 (11th Cir. 1998).

Florida law provides that officers, employees, and agents of the State generally may not be held personally liable for actions within the scope of their employment, so long as they did not act in bad faith or with a malicious purpose. Fla. Stat. § 768.28(9)(a). Because Florida Statute § 768.28(9)(a) affords protection from both liability and the suit itself, the denial of a motion for summary judgment on that basis is immediately appealable under the collateral order doctrine. *Butler v. Gualtieri*, 41 F.4th 1329, 1335–36 (11th Cir. 2022). Florida law appears to require that the issue of sovereign immunity turns on a question of law for interlocutory review to be appropriate, and this Court has reiterated that holding in *Aguirre v. Seminole County*, 158 F.4th 1276, 1291 (11th Cir. 2025).

Here, as an initial matter, the district court has not entered a final order ending the litigation on the merits because it denied Tucker and Mackenzie's motion for summary judgment on some

counts, and those counts remain pending. However, Tucker and Mackenzie have raised at least some issues of law related to the district court's denial of qualified and sovereign immunity that may invoke this Court's jurisdiction. As to Count 5 (unlawful search and seizure), the Officers argue on appeal that there was no constitutional violation, and that even if there was, it was not a violation of a clearly established right. Thus, Tucker and Mackenzie have raised a permissible legal issue for interlocutory review. *See Cottrell*, 85 F.3d at 1485; *English*, 75 F.4th at 1155.

Because Counts 12 (malicious prosecution) and 15 (conversion) concern the Officers' argument that they are entitled to Florida statutory sovereign immunity, the denial of that immunity must turn on a legal issue to be immediately appealable. *Aguirre*, 158 F.4th at 1291. This Court may review Tucker and Mackenzie's appeal as to Count 12 because the Officers argued that their probable cause to arrest Jarvis entitled them, as a matter of law, to sovereign immunity as to his state-law malicious prosecution claim. The district court disagreed with this argument, which establishes a legal issue sufficient to allow immediate review on appeal. However, Tucker and Mackenzie have not raised a legal issue as to Count 15 because they essentially argue on appeal that they should have been granted sovereign immunity because Jarvis failed to establish the necessary elements of his conversion claim. That argument is an evidence sufficiency claim that, on its own, does not present a legal issue that this Court can review.

Therefore, we have jurisdiction of the Officers' appeal of the district court's denial of immunity for the Officers on Count 5 (unlawful search and seizure) and Count 12 (state law malicious prosecution). However, we do not have jurisdiction of the Officers' appeal of the district court's denial of immunity for the Officers on Count 15 (state law conversion).

Our pendant appellate jurisdiction on Jarvis's cross-appeal is determined separately with respect to each issue cross-appealed and turns on whether the district court's otherwise unreviewable order with respect to such an issue is "inextricably intertwined" with an issue properly before this Court, or if review of the unreviewable decision is necessary to ensure meaningful appellate review of the appealable one. *Jones v. Fransen*, 857 F.3d 843, 850 (11th Cir. 2017). "Matters may be sufficiently intertwined where they implicate the same facts and the same law." *Smith v. LePage*, 834 F.3d 1285, 1292 (11th Cir. 2016) (quotation marks and alteration omitted). The "critical inquiry" in determining whether this Court has pendent appellate jurisdiction "is whether the appealable issue can be resolved without reaching the merits of the nonappealable issues." *In re MDL-1824 Tri-State Water Rts. Litig.*, 644 F.3d 1160, 1179 (11th Cir. 2011). "[T]he Supreme Court has signaled that pendent appellate jurisdiction should be present only under rare circumstances." *King v. Cessna Aircraft Co.*, 562 F.3d 1374, 1379 (11th Cir. 2009). This Court has discretion whether to exercise pendent appellate jurisdiction. *See Summit Med. Assocs., P.C. v. Pryor*, 180 F.3d 1326, 1335 (11th Cir. 1999) (stating that this Court "may,

within [its] discretion, exercise jurisdiction over otherwise nonappealable orders under the pendent appellate jurisdiction doctrine"). In determining whether to exercise its discretionary pendent appellate jurisdiction, this Court should consider judicial economy interests. *Hond. Aircraft Registry, Ltd. v. Gov't of Hond.*, 129 F.3d 543, 545 (11th Cir. 1997).

The jurisdictional exception permitting interlocutory appeals from orders denying qualified immunity does not necessarily encompass a cross-appeal from an order partially granting and partially denying qualified immunity. *Hudson v. Hall*, 231 F.3d 1289, 1293–94 (11th Cir. 2000). In *Hudson*, a case with a similar procedural posture, the court allowed the plaintiff's cross-appeal to proceed. There, the district court had granted qualified immunity to the defendant on the initial stop and for the search of the plaintiff's car because the plaintiff had consented to the search. *Id.* at 1293. But the court denied qualified immunity for the defendant's search of the plaintiffs themselves, finding that at the summary judgment stage and accepting the plaintiffs' version of the facts, the defendant lacked consent for the search. *Id.* And, the court continued, even assuming the plaintiffs consented, the defendant exceeded that consent. *Id.* On appeal, the defendant challenged denial of qualified immunity on the search of person claim while the plaintiffs cross-appealed the initial stop and search of car decisions. We held that the plaintiffs' claim were inextricably intertwined with the defendant's:

> In deciding Officer Hall's appeal, we must consider whether Officer Hall's search of Plaintiffs' persons

> clearly was unlawful given the totality of the circumstances. *See United States v. Garcia*, 890 F.2d 355, 358 (11th Cir. 1989). In examining the totality of the circumstances—and especially because Officer Hall says that Plaintiffs freely and voluntarily consented to searches of their persons—we must take into account whether Officer Hall's initial stop and search of Plaintiffs' car clearly were unlawful. *See, e.g.*, *United States v. Valdez*, 931 F.2d 1448, 1452 (11th Cir. 1991) (finding that consent to search was tainted by unlawful traffic stop and, therefore, was not free and voluntary); *United States v. Miller*, 821 F.2d 546, 549–50 (11th Cir. 1987) (same). In other words, to decide whether every reasonable officer in Officer Hall's position would have known that Plaintiffs had not consented voluntarily to a search of their persons, we must consider, among other things, whether Plaintiffs' consent (if any) was tainted by an illegal traffic stop and, more important, whether every reasonable officer would have been aware of such taint.

*Id.* at 1294 n.4.

Here, the Officers have only two claims of which we have interlocutory jurisdiction: the denial of immunity for the unlawful search and seizure and for malicious prosecution under state law. By contrast, Jarvis purports to challenge the district court order that denied every claim made in his motion for summary judgment outright to Jarvis. It is clear that Jarvis's challenge to the district court's denial of his motion for summary judgment on his unlawful search and seizure claim (Count 5) is inextricably intertwined with

the Officers' appeal of the district court's order denying the Officers' summary judgment on that same Count 5 claim alleging an unlawful search and seizure. However, we do not believe that any other of Jarvis's claims should be entertained pursuant to the pendant appellate jurisdiction doctrine. Unlike the plaintiff in *Hudson*, Jarvis's other issues on appeal do not challenge a decision that impacts the outcome of either of the two issues that the Officers have properly brought before us. Therefore, we exercise our discretion to entertain pendant appellate jurisdiction only to Jarvis's appeal so far as it pertains to the unlawful search and seizure claim.

## III. DISCUSSION

### *A. The Officers Claim that the District Court Erred in Denying Their Motion for Summary Judgment on Jarvis's Count 5, Alleging that the Officers Violated his Fourth Amendment Rights by Prolonging the Traffic Stop and Engaging in an Unlawful Search and Seizure*

We have recently concisely explained the rationale and requirements for qualified immunity:

> Lawsuits levied against public officials in their personal capacity impose costs both on the defendant officials and on society as a whole, including litigation expenses, diversion of official energy from pressing public issues, deterrence of able citizens from accepting public office, and dampening of officials' ardor in performing their duties. *Harlow v. Fitzgerald*, 457 U.S. 800, 814, 102 S. Ct. 2727, 2736 (1982). The defense of qualified immunity "is the public servant's (and society's) strong shield against these dangerous costs."

> *Foy v. Holston*, 94 F.3d 1528, 1532 (11th Cir. 1996). It protects government officials performing discretionary functions from civil litigation and liability if their conduct does not violate clearly established constitutional or statutory rights of which a reasonable person would have known. *Id.* (citing *Harlow*, 457 U.S. at 817–19, 102 S. Ct. at 2738). It accomplishes this protection by granting officials "immunity from suit," meaning "an entitlement not to stand trial or face the other burdens of litigation." *Mitchell [v. Forsyth]*, 472 U.S. [511] at 526, 105 S. Ct. [2806] at 2815 [1985].
>
> Each official who asserts qualified immunity is entitled to "an independent qualified-immunity analysis as it relates to his or her actions and omissions." *Alcocer v. Mills*, 906 F.3d 944, 951 (11th Cir. 2018). The official "must first prove that he was acting within his discretionary authority" when he performed the acts of which the plaintiff complains. *Bowen v. Warden*, 826 F.3d 1312, 1319 (11th Cir. 2016) (internal quotation marks omitted). Once this is established, "the burden shifts to the plaintiff to show that the defendant is not entitled to qualified immunity." *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1264 (11th Cir. 2004) (citing *Cottone v. Jenne*, 326 F.3d 1352, 1358 (11th Cir. 2003)). The plaintiff must establish that "(1) the defendant violated a constitutional right, and (2) this right was clearly established at the time of the alleged violation." *Id.* Judges may decide which of the two prongs of this analysis to address first in light of the circumstances in the case at hand. *Pearson v. Callahan*,

555 U.S. 223, 236, 129 S. Ct. 808, 818, 172 L.Ed.2d 565 (2009).

To be clearly established, the contours of a right must be sufficiently clear such that every reasonable officer would have understood his conduct to violate that right. *Fuqua v. Turner*, 996 F.3d 1140, 1150 (11th Cir. 2021) (citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 741, 131 S. Ct. 2074, 2083 (2011)). A plaintiff may show this through: "(1) case law with indistinguishable facts clearly establishing the constitutional right; (2) a broad statement of principle within the Constitution, statute, or case law that clearly establishes a constitutional right; or (3) conduct so egregious that a constitutional right was clearly violated, even in the total absence of case law." *Lewis v. City of W. Palm Beach*, 561 F.3d 1288, 1291–92 (11th Cir. 2009) (citations omitted). The law must not be defined at a high level of generality, but rather be particularized to the facts of the case. *Fuqua*, 996 F.3d at 1150.

When an officer moves for summary judgment on the basis of qualified immunity, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Even though, at this posture, the facts are construed in the light most favorable to the plaintiff, *Jones v. Cannon*, 174 F.3d 1271, 1281 (11th Cir. 1999), the evidence may create a fact question about whether the officer engaged in violative conduct, *id.* at 1290. "[A] genuine fact issue as to what conduct the

> defendant engaged in would preclude a grant of summary judgment based upon qualified immunity." *Rich v. Dollar*, 841 F.2d 1558, 1565 (11th Cir. 1988).

*Aguirre v. Seminole Cnty.*, 158 F.4th 1276, 1296–97 (11th Cir. 2025).

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. The Supreme Court has explained that "[t]emporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a 'seizure' of 'persons' within the meaning of this provision." *Whren v. United States*, 517 U.S. 806, 809–10, 116 S. Ct. 1769, 1772 (1996). For such a stop to comply with the Fourth Amendment, an officer must have reasonable suspicion, and a driver's violation of a traffic rule can constitute reasonable suspicion for a traffic stop. *Heien v. North Carolina*, 574 U.S. 54, 60, 135 S. Ct. 530, 536 (2014). But "a police stop exceeding the time needed to handle the matter for which the stop was made violates the Constitution's shield against unreasonable seizures." *Rodriguez v. United States*, 575 U.S. 348, 350, 135 S. Ct. 1609, 1612 (2015).

However, such an extension is permissible if it was supported by reasonable suspicion of other criminal activity. *United States v. Perkins*, 348 F.3d 965, 970 (11th Cir. 2003). "While 'reasonable suspicion' is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence, the Fourth Amendment requires at least a minimal

level of objective justification." *Illinois v. Wardlow*, 528 U.S. 119, 123, 120 S. Ct. 673, 675–76 (2000) (quoting *United States v. Sokolow*, 490 U.S. 1, 7, 109 S. Ct. 1581, 1585 (1989)). When making a determination of "reasonable suspicion," we must "look at the 'totality of the circumstances' of each case to see whether the detaining officer has a 'particularized and objective basis' for suspecting legal wrongdoing." *United States v. Arvizu*, 534 U.S. 266, 273, 122 S. Ct. 744, 750 (2002) (quoting *United States v. Cortez*, 449 U.S. 411, 417–18, 101 S. Ct. 690, 695 (1981)). "[A]n 'inchoate and unparticularized suspicion' or 'hunch' of criminal activity" is not enough to satisfy the minimum level of objectivity required. *Wardlow*, 528 U.S. at 124, 120 S. Ct. at 676 (quoting *Terry v. Ohio*, 392 U.S. 1, 27, 88 S. Ct. 1868, 1883 (1968)).

The Officers argue that there was neither a constitutional violation nor a clearly established right, so they were entitled to qualified immunity. In his cross-appeal, *see infra* note 1, Jarvis argues that the district court erred when it found that there were issues of material fact that precluded summary judgment for him on this issue.

The district court found that a reasonable jury could, viewing the facts most favorably to Jarvis and from the viewpoint of an objective officer, find that a reasonable officer would know that his authority to seize Jarvis ended when he confirmed the validity of Jarvis's driver's license and registration, confirmed that Jarvis did not have any outstanding warrants, and handed back his documents with a printed warning citation. The court next found that

based on the totality of the circumstances, for qualified immunity purposes, objectively reasonable officers would not believe they had reasonable suspicion to detain Jarvis further after the traffic stop. Specifically, the court rejected the Officers' argument that they had reasonable suspicion of Jarvis's connection to drug activity at the apartment complex sufficient to prolong the traffic stop. The court rejected the Officers' reliance on the anonymous tip because they did not independently corroborate it and because the basis of the tipster's knowledge and the veracity of the information was unknown. And the court found that a genuine issue of material fact existed about whether Officer Tucker saw Jarvis make furtive movements as well as whether Jarvis was avoiding eye contact and target glancing. And these factors plus other information gleaned during the stop, the court found, provided genuine issues of material fact about whether the Officers had articulable reasonable suspicion. Next, the court noted that the Supreme Court has established that absent reasonable suspicion, police officers cannot prolong a stop based on a traffic infraction to investigate unrelated crimes. The Court has also rejected the use of anonymous tip to establish reasonable suspicion to justify a *Terry* investigatory stop. Thus, resolving all the disputed factual issues in favor of Jarvis—as the court must do in analyzing the Officers' motion for summary judgment—the right to be free from seizure in the way the Officers allegedly seized Jarvis was clearly established, and so the court denied them qualified immunity

We agree with the district court that whether the Officers had reasonable suspicion of another crime based on the totality of the circumstances is an issue for the jury.

As the district court explained, the Officers' wholesale reliance on the tip is misplaced. Although the tip did identify a car similar to Jarvis's at a nearby apartment complex, the tip was anonymous and merely related that the car was in the parking lot surrounded by people. Moreover, an anonymous tip, "standing alone, would not warrant a man of reasonable caution in the belief that [a stop] was appropriate." *Alabama v. White*, 496 U.S. 325, 329 (1990) (quotation marks omitted). For an anonymous tip to reasonably support an officer's suspicion of criminal activity, it must be accompanied by sufficient indicia of the tip's reliability. *Florida v. J.L.*, 529 U.S. 266, 270, 120 S. Ct. 1375, 1378 (2000). A detailed, contemporaneous report of suspicious activity to a 911 emergency dispatcher carries with it sufficient indicia of reliability when the details and location of the described events turn out to be correct. *Navarette v. California*, 572 U.S. 393, 400, 134 S. Ct. 1683, 1689–90 (2014).

Here, the caller reported that a black or blue Mitsubishi was in the parking lot with a crowd around it and there was a white man in his forties wearing a red tank top, black basketball shorts, white shoes, and carrying a backpack, walking around the vehicle. The dispatcher was the one who characterized the incident as possibly involving drugs. But Jarvis, according to the dashcam, was wearing a green t-shirt and khaki shorts, so he did not match the description. The Officers did not report there was a concern about

drug activity in the area and did not independently investigate the tip. They did not observe Jarvis engage in any narcotics activity beforehand that would provide credibility to the tip. Between the disconnect in the physical description and the caller's lack of personal knowledge about what was occurring, the tip alone did not provide enough for the Officers to extend the search.

The Officers also point to other circumstances to support their continued detention. Specifically, they point to: Officer Tucker's observation of Jarvis's furtive movements as he approached the vehicle; Officer Mackenzie's observation of a knife on the console; Jarvis's avoiding eye contact and target glancing; and Jarvis's report that he had been recently arrested for drug activity and been incarcerated twice for selling drugs, totaling nineteen years.

Examining each point, we agree with the district court that several facts are disputed such that genuine issues of material fact exist. For instance, Officer Tucker's alleged observation of furtive movements is undermined by the heavy tinting of Jarvis's window and Officer Mackenzie's testimony that he did not observe any such movements. Additionally, Officer Tucker saw the movements before the stop began, undermining their importance to the prolongation of the stop. Also, video of the stop does not support the Officers' argument that Jarvis was avoiding eye contact, and the video shows he was cooperative. But the knife on the console, Jarvis's admission of serious drug activity in the past, and Jarvis's confirmation that he had just left the apartment do tend to support the

Officers' actions. In sum, because resolution of the reasonable suspicion issue will be influenced by the jury's resolution of the genuine issues of material fact, the issue is appropriate for the jury.

Turning to the issue of whether the alleged violation was clearly established, the Officers argue that the cases the district court relied upon are distinguishable. First, they argue that the issue in *Rodriguez v. United States*, 575 U.S. 348, 135 S. Ct. 1609 (2015), was not if the officers were justified in extending the stop based on their reasonable suspicion that other criminal activity was afoot. But *Rodriguez* held that a traffic stop cannot be prolonged absent reasonable suspicion of criminal activity. Citing precedent, it explained that once the tasks related to the traffic infraction have been completed, the officer's authority to hold the subject of the stop ends. *Id.* at 354, 135 S. Ct. at 1614. And the district court relied on *Florida v. J.L.* to show that reasonable officers would know that an anonymous tip lacking sufficient indicia of reliability cannot be used to justify a *Terry* stop. Taking all of the facts in the light most favorable to the plaintiff, as we must in the summary judgment context, the Officers did not have reasonable suspicion of other criminal activity. Therefore, there was clearly established law that they could not prolong the traffic stop, and we affirm the district court's finding that qualified immunity for the Officers is not warranted at this stage.

Accordingly, we affirm the district court's judgment denying the Officers qualified immunity on Jarvis's Count 5.[1]

*B. The Officers Claim that the District Court Erred in Denying Their Motion for Summary Judgment on Jarvis's Count 12 Alleging a State-Law Malicious Prosecution Claim*

The Officers argue that the district court erred when it denied them immunity for Jarvis's state-law malicious prosecution claim.

Under Florida law, to prevail in a malicious prosecution action,

> a plaintiff must establish that: (1) an original criminal or civil judicial proceeding against the present plaintiff was commenced or continued; (2) the present defendant was the legal cause of the original proceeding against the present plaintiff as the defendant in the original proceeding; (3) the termination of the original proceeding constituted a bona fide termination of that proceeding in favor of the present plaintiff; (4) there was an absence of probable cause for the

[1] As noted above, we do have pendant appellate jurisdiction of Jarvis's cross-appeal challenge to the district court's denial of his motion for summary judgment on his Count 5 claim (unlawful search and seizure). The discussion above indicates that there are genuine issues of material fact relating to whether the Officers had reasonable suspicion to prolong the traffic stop. Therefore, the district court properly denied Jarvis's motion for summary judgment on his Count 5 claim, and we also affirm the district court's judgment in that regard.

> original proceeding; (5) there was malice on the part of the present defendant; and (6) the plaintiff suffered damage as a result of the original proceeding.

*Alamo Rent-A-Car, Inc. v. Mancusi*, 632 So. 2d 1352, 1355 (Fla. 1994) (citing *Burns v. GCC Beverages, Inc.*, 502 So. 2d 1217 (Fla. 1986), and *Adams v. Whitfield*, 290 So. 2d 49 (Fla. 1974)). In context of malicious prosecution, Florida courts have held that the lack of probable cause can be used to infer to malice. *Gallucci v. Milavic*, 100 So. 2d 375, 378 (Fla. 1958).

The district court denied official immunity to the Officers because they failed to demonstrate that they had probable cause for all of the crimes for which they arrested Jarvis. But as the Supreme Court noted, state-law malicious prosecution claims require a finding of probable cause for each charge. *Chiaverini v. City of Napoleon*, 602 U.S. 556, 563–64, 144 S. Ct. 1745, 1751 (2024).[2] And

[2] Although our research has not uncovered a Florida case following the general rule—that a state-law malicious prosecution claim requires a finding of the absence of probable cause for each charge—the district court so held and the Officers' brief on appeal does not challenge this holding. Accordingly, the Officers have abandoned any such challenge. *See Greenbriar, Ltd. v. City of Alabaster*, 881 F.2d 1570, 1573 n.6 (11th Cir. 1989) (holding that issues not raised on appeal are deemed waived).

that failure to show probable cause means that malice can be inferred. *Gallucci*, 100 So. 2d at 378.[3] Thus, the district court did not err in denying the Officers immunity for this claim.

Accordingly, we affirm the district court's judgment denying the Officers immunity on Jarvis's Count 12.

## IV. CONCLUSION

For the foregoing reasons, the decision of the district court is AFFIRMED.

---

[3] And the genuine issues of fact with respect to whether the Officers lied about seeing furtive movements and suspicious eye contact is potential evidence of actual malice.